The plaintiffs claimed the slave in question under the following clause in the will of Elizabeth Meredith:
"I lend to my granddaughter, Mary R. Montgomery, wife of George W. Montgomery, during her natural life, my two negro girls, Venus and Nancy, and man, Cimon; and upon her death I give the same to all the children which she may leave at the time of her death; and in case any of them should die before marriage or arrival to the (668) age of twenty-one years, then his, her or their share or shares to the survivors or survivor of them. And if all of them die before marriage or arrival to full age, then to the children of my granddaughters, Elizabeth R. Hare, Mary M. Montgomery and Julia A. Montgomery, to be equally divided per capita."
It appeared in evidence that George W. Montgomery was the husband of Mary R. Montgomery, the granddaughter of the testatrix, as stated in the will, and that the slave Cimon was placed in his possession by the testatrix upon or soon after his intermarriage; that he continued in possession of said slave up to the time of his wife's death, which happened in the spring of the year 1832; that the said Mary R. Montgomery left surviving her by her said husband three children, all of whom died in the fall of 1832 while infants, and without having been married; that after the death of his said wife, George W. Montgomery remained in possession of the said slave up to the time of the death of his last surviving child, and continued thereafter in the undisturbed possession of said slave, exercising all the control usually exercised by a master over his slave, up to the time of the death of the said George in the month of December, 1836; that in February following, one Isaac Pipkin was appointed his administrator, and took the said slave into his possession, hired him out for that year, and in the ensuing year hired him to the defendant in this action. The plaintiffs proved further by Lewis M. Cowper, one of the executors named in the will of Mrs. Meredith, and who alone qualified thereto, that upon the death of his testatrix the negro Cimon was in the possession of George W. Montgomery; that he, the executor, never interfered in any manner with his possession, nor *Page 526 
ever made any formal assent to the legacy, having never said anything in relation to the matter up to the time of the death of the said George; that there was a sufficiency of assets, without the said slave, to pay the debts; and that a short time before the bringing of this action, and while the defendant was in possession of the said slave, he, the witness, was called upon by the attorney of the plaintiffs to know whether he would assent to the legacy to them, and he thereupon made a formal assent. It was proved further that the present plaintiffs were (669) the only children of Elizabeth R. Hare, Mary M. Montgomery and Julia A. Montgomery, named in the said will, at the death of the survivor of the children of Mary R. Montgomery, wife of the said George W. Montgomery. It was admitted that William M. Montgomery, one of the plaintiffs, had been of full age more than three years before the bringing of this action.
The defendant objected:
1. That the plaintiffs were not entitled to recover because the limitation to them in the will was too remote.
2. That the action should have been brought in the name of the executor.
3. That the assent to the legacy of the plaintiffs having been made by the executor when the property was in the adverse possession of the defendants, and not before, they could not sustain their action.
4. That the plaintiffs were barred by the statute of limitations.
His Honor instructed the jury that the limitation over to the plaintiffs, in the bequest of Mrs. Meredith, was not too remote; that this was one of those cases in which the law, to carry out the intention of the testatrix, as apparent from the will, and to prevent the bounty from being defeated, would convert the word or into and, whereby the devise after a life estate would be to a life or lives in being, and twenty-one years after, which in law is a good limitation. Upon the second and third points his Honor charged the jury that a legacy was an inchoate right, not perfected at law until the assent of the executor, and that when the executor did assent, it related back to the death of the testator; and that, therefore, the action was well brought by the plaintiffs in their own name. Upon the last point he instructed the jury that if, in this case, William M. Montgomery was barred by the statute of limitations from bringing this action, the statute barred the other plaintiffs; that William M. Montgomery was not barred unless the possession of George W. Montgomery was adverse; that George W. Montgomery held the negro in question under the bequest in Mrs. Meredith's will by (670) which a life estate was given to his wife, and after her death, and the death of her children under age and unmarried, to the plaintiff; that during the life of his wife he held the negro in his own *Page 527 
right, and after her death he held him for his children, under the devise to them, as being their parent and next friend; and after their death he would still continue to hold him, under the devise in the will, for the benefit of the plaintiffs, until, by some declaration or act of his, he had signified his intention to hold him as his own property and adverse to the plaintiffs; that it was for them to say whether the defendant had satisfied them that George W. Montgomery ever had, by act or declaration, signified or made known his intention to hold the negro Cimon as his own property, and adverse to the plaintiffs; that if the defendant had so satisfied them, then the statute began to run from such act or declaration, and if he held more than three years from that time, that his title in this action would be good, because it would be a bar to William M. Montgomery, and in that case they would find for the defendant; if, on the other hand, the defendant had not so satisfied them, then the statute was no bar, and they should find for the plaintiffs. There was a verdict and judgment for the plaintiffs, and the defendant appealed.
The instruction to the jury upon the statute of limitations seems to the Court to lay down a principle that is not entirely correct. The possession of George W. Montgomery is presumed to be upon his own title and for his own benefit, and therefore adverse to the plaintiffs, as to the rest of the world, unless the circumstance that he had acquired the possession of the negro as owner of a particular estate prevents a possession, continued after the expiration of a particular estate, from becoming adverse to the remainderman. The plaintiffs cannot treat his possession as their own, upon the ground that some of them were infants; for, with respect to the statute of limitations, this action is to be regarded as if William Montgomery, who was of age more than three years before suit brought, was the sole plaintiff.Riden v. Frion, 3 Murp., 577. His Honor, indeed, placed (671) the question exclusively on the fact that the plaintiffs were remaindermen. As we understand his language, he held that the possession in this case, after the death of Mrs. Montgomery and her children, could not, in law, be deemed adverse upon the strength of the possession itself and the notorious exercise of all ordinary acts of ownership, however long continued; but that there must be some further and distinct declaration, or act of the party, for the purpose of specially signifying or making known that he claimed the negro as his own property, and held adversely to the remaindermen. *Page 528 
The rule thus laid down would have an important influence on the right to a most valuable species of property amongst us, and we are not prepared to give our assent to it. By it the owner of a particular estate and the remainderman are placed upon the footing of bailee and bailor, of which we are not satisfied. As to land, the particular tenant holding over stands perhaps towards the remaindermen as a tenant towards a landlord. But the idea of such a tenancy does not belong to the ownership of distinct successive estates in personal chattels, and not arising out of any contract between the parties, or those under whom they claim. The one is not obliged to preserve the interest of the other. The owner of the present interest is not the bailee of the owner of the future interest, and there seems to be no reason of policy to authorize the fictitious creation of that relations between them. In many cases, no doubt, the jury may justly infer, as a fact, that the possession thus continued is not adverse to the remainderman. In the present case, for example, it would be a natural inference that after the death of their mother the father retained the possession for her children. They were his own; were infants probably, living with him; and the limitation over to them was in clear terms that could not be misapprehended even by a layman. Besides, the father had no shadow of claim against his children. But none of those reasons apply to the present plaintiff, and the same inference will not arise in any mind. The plaintiffs are strangers to G. W. Montgomery or connected with him collaterally and remotely only; one of them is of full age, and resident probably in the same neighborhood; and they claim under a bequest which (672) is valid only by professional construction, and, taken literally, would render the limitation to them void. Is it not probable that G. W. Montgomery did not know that "or" could be read "and," and that therefore he might suppose the gift to his children to be, in law, absolute? If he did so believe, then, upon the death of the children, the father would be entitled as their next of kin; and if he so claimed, his possession was adverse. For adverse possession consists of actual possession, with an intent to hold solely for the possessor to the exclusion of others. No color of title is requisite on which to found the possession of personal chattels; and with or without a good title, the possession will be adverse if the party held for himself. But a colorable title or a plausible claim may tend to evince the nature of the possession; whether, for example, it be adverse or subservient to another title. If the principle stated by his Honor be admitted to be generally true, yet we think these are plainly grounds in this case on which a jury might find the possession to be adverse, without any precise declaration to that effect, or an act for the special purpose of making known his claim. With what actual intent the possession was kept was *Page 529 
for the determination of the jury, aided, indeed, by legal presumptions to a certain extent. If, from the terms of the will and the interpretation that an ordinary man would put on it, and from the length of the possession by G. W. Montgomery and his administrator after the death of his children, and from the acts of ownership, the jury inferred that the defendant, and those under whom he claims, in fact believed the title of G. W. Montgomery to be good, and for that reason kept the possession, the jury should have been instructed that such possession was adverse. We think those circumstances are evidence on which a jury might found such an inference, without the declaration required in the instruction, and without any further act than the possession and the exclusive exercise of dominion over the negro; and, therefore, that the judgment must be reversed and a venirede novo awarded.
PER CURIAM. Judgment reversed.
Cited: Watkins v. Flora, 30 N.C. 380; Wear v. Burge, 32 N.C. 171.
(673)