Taytor, Chief-Justice,
 

 delivered the opinion of the Court:
 

 My first impression upon the argument of this case was in favor of the Plaintiff; but upon a careful examination of all the cases cited, and after a full discussion of the subject amongst my brothers, I concur with them in opinion that judgment ought to be rendered for the Defendant.
 

 The case is shortly this : The Plaintiff sued out a writ of waste against Priscilla Hilliard, who was in possession of the land as tenant for life, under a devise from her husband. Peqding the suit she died, and a
 
 sáre jadas
 
 issued against her administrator to revive the suit. To this he has pleaded that the action cannot be revived against bins ; the Plaintiff replies that the intestate was tenant for life, and the Defendant demurs. The question to be decided, is, Whether the writ of waste is comprehended in the words or spirit of the acts, which provide for the revival of suits for or against the representatives.
 

 The act of 1799, provides against the abatement of actions of ejectment, detinue, trover, trespass where property real or personal is in contest, and such action of trespass is not merely vindictive.
 

 The act of 1805 preserves in like manner, the actions of trespass'
 
 vi el armis,
 
 and trespass on the case, instituted to recover damages done to property either real or,personal.
 

 
 *518
 
 The writ of waste is not within the words of either of these acts ; but as it is an action in which real property is in contest, and is not merely ’vindictive, may it not be within the Equity of the act of
 
 1799,
 
 although it be not an action of trespass ? And as it is instituted to recover damages done to real property, may it not in like manner be within the Equity of the act of 1805
 
 i
 
 The solution of these questions may be facilitated by considering the nature of the- action. Whether it lay at Common Law against a tenant for life, such as the Defendant’s intestate was, is not clearly ascertained. Lord Coke asserts that it did not, upon the principle that the party creating the estate might have provided against the commission of waste
 
 ;
 
 and that it lay against those tenants only whose estates were created by the Law, as tenant in dower and by the courtesy. 2 Inst. 299. The authority of Bracton is the other way. 2 Reeve 149. But whichever opinion may bo correct, it is certain that a new remedy is given by the statute of Gloucester, and that the action now brought rests its foundation on that statute. The words of it are, “ He that shall be attainted of waste shall lose “ the thing that he hath wasted, and moreover shall re-sí compense thrice so much as the waste shall be taxed.” The word
 
 “
 
 attaint,” which is used in the law to denote the conviction of a crime, the forfeiture of the ¡ilace wasted, and the treble damages, bespeak this to be a highly penal statute; and when the remedy under it is contrasted with that at Common Law. (which was damages merely, and the appointment of a superintemlant) it may be almost pronounced vindictive. But when it is considered further, that real property ceases to be in contest by the deatli of the tenant, and that three times the amount of the injury sustained, are sought to be recovered out of the assets of him who did the wrong, who is no longer alive to defend himself, to warn by example, or be reformed by punishment, it may be thought with greater confidence, that the action has become vindictive. The Common Law, upon which
 
 *519
 
 all .the actions specified in the two acts of 1799 ami Í805 are founded, aims in all cases to apportion the redress to
 
 .
 
 the wrong really done
 
 \
 
 and it does not seem to be a .sound construction, to extend by Equity those acts to a case so wholly adverse to its spirit. This rule is not less just than those which1 require penal acts to be construed strictly and forbid the creation of a penalty by implication.
 

 But the question may be considered in another and perhaps a more satisfactory light. The evident design of the two acts of 1799 and 1805, was to prevent the death of either party operating an abatement of the suit in the cases enumerated, and thus partially to repeal the Common Law maxim of
 
 actio personalis moritnr cum persona.
 
 They intended to confer upon the representatives, of
 
 either
 
 party, dying, the like light
 
 to
 
 prosecute or defend the suits,' and hence they contemplated only those cases, wherein the right might be equally and reciprocally exercised. There is nothing in the theory and principles of the action of trespass which forbid the representatives of the Plaintiff from prosecuting it, or those of the Defendant from defending it. This was alone prevented by force of the maxim just quoted. But the writ of waste is founded upon principles peculiar to itself, and more especially dependent upon a privity between the reversioner and tenant. This ligament once broken, the action is gone. No one shall have an action of waste unless he hath the immediate estate of inheritance.
 
 *
 
 Between the heir of the reversioner and the tenant, there was no privity during the life of the re-versioner, when the waste was committed. If the rever-sioner bring the action and die, could the acts mean that his representatives should prosecute the suit, and thus destroy the. principle, on which it is founded ? Assuredly not. Then the action of waste was not contemplated by the Legislature, and is not embraced by the acts, which allow a revival “ in behalf of or against the representatives of
 
 “ either party.”
 

 
 *520
 
 To revive the, action
 
 against
 
 the representatives of the Defendant, would in many cases lead to equal innovation and more evident injustice. The same privity requires that the reversioner shall bring the action of waste against the tenant for life, although the waste committed be done by a stranger. The Law is the same where the tenant is an infant.
 
 *
 
 Yet if the acts are to be extended to this action, it must be revived against the executors and administrators of innocent persons, who never were
 
 iS
 
 attainted” of waste, and against whom it was only suable as the consequence of an artificial system. In many cases the privity is destroyed by the act of the parties in their life time, and, in consequence, the action abates. It would be strangely incongruous to revive it notwithstanding the destruction of the privity by death.
 

 It has been ably and strenuously argued for the appellant, that the statute of 4 Ed. 3, ch. 7, has received an equitable construction, by which other actions, though not within the words, have been held to be within the meaning and
 
 intent;
 
 and that the decisions thereon will justify the Court in construing the acts of 1799 and 1805 to include the action of waste. That statute, after reciting that in times past executors have not liad actions for a trespass done to their testators, as of the goods and chattels of the said testators carried away in their life, so as such trespasses have remained unpunished, enacts
 
 “
 
 That the ex-
 
 “
 
 ccutor in such cases shall have an action against the “ trespassers, and recover their damage in like manner
 
 6e
 
 as they whose executors they be, should have had if " they were living.” The words of this statute are general, not specifying the kind of action which the executors shall have, but
 
 actions
 
 against the trespassers. The word
 
 trespassers,
 
 which is used in the sense of wrong-doers, had a more extensive meaning in that age than it now bears. Cases which approached nearer to the nature of a contract, were comprehended under the term trespasses.
 
 †
 
 In
 
 *521
 
 this view the statute would have borne a larger construetion than it has received.
 
 *
 

 Rules for construing statutes have been cited from. Plowdcn and other books, which contain much sound legal
 
 reasoning;
 
 but the extent of their application in fixing the meaning of modern statutes, is materially limited by the decisions. of later times. In Bradly v. Clarke,
 
 †
 
 Lord Kenyon says, “ Many cases have been cited to shew
 
 “
 
 that the Courts extended the construction of ancient
 
 “
 
 acts of Parliament beyond the words, and in some in-
 
 “
 
 stances (I should have thought) beyond the fair im-
 
 “
 
 port of them. However, as such constructions have “ been made, they become the guide for succeeding “ Judges.” In the same case, the language of Buller, Justice, is more explicit:
 
 “
 
 With regard to the construc-
 
 (s
 
 tion of statutes according to the intention of the Legis-
 
 es
 
 la ture, we must remember that there is an essential dif- “ ferenro between the expounding of modern and ancient 4< acts of Parliament. In early times, the Legislature
 
 ss
 
 used (and I believe it was a wise course to take) to pass “ laws in general and in few terms: they were left to the
 
 “
 
 Courts of Law' to be construed, so as to reach all the
 
 “
 
 cases within the mischiefs to be remedied. Rut, in mo-
 
 “
 
 dern times, great care has been taken to mention the “ particular cases within the contemplation of the Legis-<e 1 aturo; and, therefore, the Courts are not permitted to
 
 “
 
 take the isame liberty in construing them as they did in “ expounding the ancient statutes.”
 

 The same principles governed the decision in the case of Willson v. Knutly, in which an action of covenant was brought upon the statute of 3 W. and M. ch. 14, against the devisee of land, to recover damages for a breach of covenant by the devisor. That statute recites, that “ it is
 
 “
 
 not reasonable or just that, by the practice or contri- “ vanee of any debtors, their creditors should be defrauded “ of their just debts; nevertheless, it hath often happened
 
 *522
 
 “ that several persons having, by bonds and otner sped- “ allies, bound themselves, and their heirs, and have after- “ wards died seised, &r. have to the defrauding such their “ creditors devised tlie same,” &c. The enacting clause then provides that in the cases before mentioned, such creditors shall have their
 
 actions of debt
 
 upon the said bonds and specialties. Here it was agreed that an action of co\enant was within the mischief recited, and that it would have been better to have made the remedy coextensive therewith. But the Court say, that in construing a comparatively recent act of Parliament, where a particular remedy is given by action of debt on bonds amt specialties, where no remedy was before, they cannot extend it to actions of
 
 covenant;
 
 that to do so, where the words giving tiie form of action are precise, would be to legislate, and not to construe the act of the Legislature. The case, too, is rendered stronger, inasmuch as the act was levelled at a species of fraud, towards the suppression of which it was desirable that it should receive every possible extension.
 
 *
 

 The words of the preamble of the act of 1805, profess its design to be to remove the doubts which arose out of the act of 1799, whether actions for the recovery of damages for an injury to real or personal property could be revived, where the property itself was not in dispute. If the enacting clause had been as general as the preamble, to wit: “That actions for injury
 
 to
 
 real
 
 or
 
 personal pro-
 
 “
 
 perty may be revived, although the property itself is not
 
 “
 
 in contest,” they would certainly have included the action of waste after the death of a Defendant who was tenant for life. But where the words of an enacting clause are clear and unambiguous, it is neither necessary nor allowable to call in the aid of the preamble to enlarge their meaning. The demurrer must be sustained.
 

 *
 

 Co.
 
 Lit. 53, b.
 

 *
 

 Co. I,it. 54, a.
 

 †
 

 3 Reeve’s
 
 His. E. I,. 89.
 

 *
 

 Chitty on Plead. 58.
 

 †
 

 5 Tem Rep. 201.
 

 *
 

 7 East. 128.