Ruffin, C. J.
 

 There has been a diversity of opinion, as to the right and power of a married woman to charge her general specialty debts on her separate property, or to dispose of such property, when the settlement designates a particular mode of conveyance oí* appointment, by any other mode than the one specified. Some have supposed, that every security, given by a feme covert,'having separate property, is to be considered as given with a view to her separate estate, because iu that way only can it have any effect. Some also have thought, that, as a married woman, in respect of her separate property, is in a Court of Equity regarded as a
 
 Jeme sole,
 
 the general right of disposition, as the owner of the property, authorizes her to convey or charge the estate by any instrument or means not positively forbidden in the settlement. But whatever doubts have been entertained on those points, they cannot "affect the present case; in which those questions do not arise. The deed before us, although it provides how Mrs. Brownlow may appoint the estate itself to go after her death, does not designate the manner of charging or disposing of the profits arising in her life lime, which are given to her absolutely. She has, therefore, nn unrestricted authority to charge them with her debt by any
 
 *240
 
 instrument or means, which distinctly denotes her intention to do so.
 

 In
 
 Hulme
 
 v
 
 Tenant,
 
 1 Bro. C. C. 16, lands were settled in trust, that the trustees receive and pay the rents and profits to the wife to her separate use, and convey the estates themselves, as she, by will, or deed executed in the presence of two witnesses, should appoint, and in default of appointment, to her heirs. The wife and husband joined in a bond, and alter wards she borrowed a further sum, and then gave her own bond for the whole, amounting ito £180. Thecreditor filed his bill for payment out ofthe separate estate, and Lord Thurlow, without deciding- upon the liability of the estates themsel ves, declared the rents liable to the satisfaction of the debt. In coming to this conclusion Lord Thurlow reasoned to a great degree, as if he thought the
 
 feme covert,
 
 in respect to the rents, when they arose, as her separate personal property, competent to act in all respects as if she were sole; and therefore that her bond, as a general engagement, bound that property. That has been confidently questioned, and in
 
 Sperling
 
 v
 
 Rockfort,
 
 8 Ves. 164, and
 
 Jones
 
 v
 
 Harris,
 
 9 Ves. Lord Eldon approves ofthe decree, not upon that reasoning, but on the ground that the intention to contract with reference to the separate estate of the wife was to be implied from the circumstances of her joining the husband in one bond and giving another solely. And he lays down the doctrine, which seems to have been generally adopted in succeeding cases, that the separate property is liable only to a person “contracting with her, not as a married woman merely, but as a married woman having a separate estate.” In other words, the engagement must be contracted in reference to the separate property, either express or presumptive. All admit that, if clearly so contracted, in reference to the separate property of the
 
 feme covert
 
 and upon the faith of it, her engagements must be answered out of her separate personal property and out of the profits, at least, of her separate real estate.
 

 Such is our Case, for the intention to make Mrs. Brown-
 
 *241
 
 low’s separate property, held by Mr. Pettway as her trustee, liable, was declared in writing at the time of giving the bond, and therefore, making part of the contract, and is admitted in the answer.
 

 Mrs. Brownlow’s children have no interest in the slaves, but they belong exclusively to her. The rents of the land in her time were hers, as her part of the benefit of the gift. She could dispose of them as she pleased, either by spending them in living, or in the purchase of property, to the use of another or to her own separate use. She chose the last, and the slaves thus purchased are, consequently, liable for the plaintiff’s debts. Indeed, those slaves were the fund, in reference to which, directly, the contract was made, for the land itself had before been sold, and the slaves alone were then held by Mr. Pettway as trustee. It is admitted, that they are of value sufficient to satisfy the plaintiff’s demand, and the costs of this suit ,• and therefore it must be referred to the clerk to compute the principal money and interest due to the plaintiff, and to ascertain the costs of this suit, and upon the coming in of the report, there must be a decree, that, unless Mrs. Brownlow should in some reasonable time pay the sum so found due to the plaintiffs and their costs, Mr. Pettway shall raise the same out of the said trust of negroes by the sale of one or more of them, and pay the same to the plaintiffs, or into Court for them, on or before the first day of the next term of this Court.
 

 Per Curiam. Decree accordingly.