FREDERICK J. SWANN and others v. GEORGE MYERS.

A testatrix devised to her executors, and to the survivor and the executor of such survivor, certain real estate, "in trust and confidence, for the several interests and purposes, provisions and limitations hereinafter expressed and declared. that is to say, to the separate use and behoof of the said F. S., for and during her life, and after her death, *in trust* as aforesaid, to the use of such child or children as may be alive at her death:" and the said testatrix, in a former clause of her said will, having given to her executors and the survivor of such executors, and the executors of such survivor, power to sell said real estate in certain events, which was done to one B, in 1836, only one of the executors of the original signing the conveyance, and signing as agent for his co-executor; and which was also conveyed to said B by the life tenant F. S. and her husband: *Held,* that this was the limitation of an " use upon an use," and that B took the trust estate during the life of F. S., and that until her death, his possession and those claiming under him, was not adverse to the children of F. S., who were claiming the same, under an executory, contingent bequest."

CIVIL ACTION, for the proper construction of a will, commenced on the 9th day of April, 1873, in the Superior Court of New Hanover County, and thence removed to COLUMBUS County, upon the affidavit of plaintiffs, and there tried before McKoy, J., at Spring Term, 1876.

The suit was instituted to recover a certain storehouse and lot on Front street, in the city of Wilmington, claimed by plaintiffs as tenants in common, and damages for its detention. Plaintiffs claim under the will of Alice Heron, deceased, which was duly proved at May Term, 1813, of the Court of Pleas and Quarter Sessions of New Hanover County, to which said will John Waddell and John R. London were named as executors. In her will the testatrix devised as follows :

" I give and devise to my executors hereinafter appointed, all that tract of land lying between the southern boundary of Wilmington and the Greenfield plantation ; also, all my land lying on or near Long creek, in New Hanover county, to be sold by my executors, or the survivor—or the executor of such survivor—and the money arising from the sale of said tract or tracts : 1st. Deducting legacies to William and Mary McKenzie, to be loaned upon interest until it shall amount to fifteen hundred dollars, and then such sum to be expended by my executors, or the survivor—or the executor of such survivor—in the improvement of my lots hereinafter devised *in trust* to the use and benefit of my granddaughter, Frances Swann. I give and devise all the residue of my real estate, of whatsoever value and kind, to John Waddell and John R. London, the survivor and executor of such survivor, *in trust* and confidence for the several interests and purposes, provisions and limitations herinafter expressed and declared ; that is to say, to the separate use and behoof of the said Frances Swann, for and during her life ; and after her death, *in trust* as aforesaid, to the use of such child or children as may be alive at her death ; or, in

case of my granddaughter, Frances, demises without children or a child, but leaving the issue of such child or children last mentioned—*provided, however*, that if at the death of my granddaughter, Frances, neither has issue, or the child or children of such issue shall be at the age of twenty-one years, or after the death of my granddaughter none of her issue or the children of her issue shall arrive to the years of twenty-one—then and then only to the use of those who would have inherited my estate had Frances died without issue or children of such issue in my lifetime."

That the said testatrix, in a subsequent clause of her said will, devised as follows: "And it is my will that the trustees aforesaid, and the survivor—and the executor of the survivor—in the soundness of their discretion, may join with the *cestui que use*, or guardian of the *cestui que use*, in making any conveyance of the above property settled in trust as aforesaid, as may to them seem proper."

Upon the trial in the Court below, the following matters and facts were admitted to be true, to wit: that the promises in dispute are a part of the real estate devised by the residuary clause of real estate above cited; that the same are a part of the premises, and professed to be conveyed in the deed to Erastus Buck hereinafter referred to; and that the defendant claims the same under a title derived from said Buck; that the same are, and have been in the possession of the defendant since the 27th day of July, 1853; that John Waddell did not qualify as one of the executors of said Alice Heron, the testatrix, but that John R. London, the other of the said executors, duly qualified as such when the will was proved; that said London survived the said Waddell, but afterwards died, leaving a will in which Marsden Campbell and William C. Lord were named as executors, who duly qualified as such in the said Court of Pleas and Quarter Sessions of New Hanover County.

It was also admitted that the said Frances Swann, wife of

John Swann, survived her husband, dying in July, 1871; that her husband, the said John, died in 1836 ; and that the children of the said Frances living at the time of her death, are the plaintiffs, Fred. I. Swann, born 15th October, 1823, Lucy, wife of Alexander Waddell, born 25th January, 1831, Rebecca, wife of Frederick W. Swann, born 20th September, 1829, Anne Swann, born 10th September, 1818, and Mary, wife of Arthur J. Hill, born 7th January, 1811 ; and that these are the only children of the said Frances Swann, the grand daughter of the testatrix, Alice Heron, living at the death of her mother.

The defendant, George Myers, claimed title to the premises in dispute, under a deed to said Erastus Buck, executed 12th February, 1836, and duly proved and registered, from said John Swann and wife Frances. It, the deed, was also executed under the hand and seal of William C. Lord, one of the executors of John R. London, trustee, and purported to be executed under the hands and seals of Marsden Campbell, as executor of John R. London, trustee, by the said William C. Lord, attorney :—but defendant offered no evidence of any power of attorney, or any other authority whatever, from the said Campbell to said Lord, to sell said premises, or to execute said deeds for and in his, the said Campbell's, name.

Defendant, Myers, also put in evidence a connected chain of title, covering the premises, from said Buck down to himself, and relied on his possession, and that of those under whom he claimed, with color of title, as a bar to a recovery by the plaintiff.

Several witnesses were introduced by defendant, to show that Erastus Buck and persons claiming under him had been in the actual possession and use of the premises all the time from the date of said deed to said Buck, to the trial of this action, claiming the same as their own. The defendant also proved that there was no actual notice to him of

the trusts, declared in the will of Alice Heron, until after the acceptance of his deed and the payment of the purchase money, which evidence was objected to by the plaintiff, but admitted by the Court—his Honor holding that the defendant had constructive notice from the deed reciting the trusts being registered at the time of purchase in the county of New Hanover. It was also proved, that the consideration, two thousand dollars, set forth in the deed to Erastus Buck, was a full and fair price at the date of the deed for the lands described in said deed.

The Judge presiding submitted the following issues to the jury:

1. Has the defendant and those under whom he claims, had continuous adverse passession of the premises in dispute, under successive and connected deeds, from the execution of the said deed to Erastus Buck, viz: the 12th February, 1836, to the commencement of this action?

2. What damages are the plaintiffs entitled to, for use and occupation of said lands?

To the first of said issues, the jury responded: The defendant and those under whom he claims have been in continuous possession under successive and connected deeds, and including the deed to Erastus Buck, from the date of said deed, to-wit: 12th February, 1836, to the commencement of this action, and claiming under said deeds.

In response to the second issue the jury found the value of the premises from July, 1871, the date of the death of said Frances Swann, to the time of the trial of this suit, to be five thousand and six hundred and fifty dollars, that being at the rate of twelve hundred dollars a year.

The plaintiffs contended that the estate of the plaintiffs in the premises has not been divested: and that they are entitled to recover for the reasons among others: That the said deed to Erastus Buck, not having been executed by Marsden Campbell, one of the executors of John R. London,

trustee, nor by the parties entitled to the remainder in fee, in the trust after the death of Frances Swann, was void and therefore passed no estate, legal or equitable, in the premises to said Buck. And even if that position is not correct, no right to the use of the premises passed for a longer period than the life of Frances Swann.

That if the legal title was vested in Erastus Buck by said deed, yet the conveyance was a breach of trust, and as the defendant claims the premises under a title derived from said Buck, he was fixed with constructive notice of the breach of trust, by the will of Alice Heron, which was re-corded in the Clerk's office, and the deed to Buck, registered in the Register's office of New Hanover county, when he purchased, and therefore the plaintiffs are entitted to re-cover.

That the possession of the premises, by the defendant, and those under whom he claims, as found by the jury, does not bar or affect the title of the plaintiffs; that said possession was not adverse as to the plaintiffs, prior to the death of their mother, Frances Swann, the plaintiffs, by the pro-visions of the will of Alice Heron, not being entitled to the use and the provision of the premises until her death.

It was contended by defendant's counsel:

1st. That the legal and equitable title passed by the deed to Erastus Buck.

2d. If not, that deed was a defective execution of the power contained in the will of Alice Heron, which will be aided by the Court.

3d. That from a long possession under a chain of title, as found by the jury, the law presumes the execution by all necessary parties of a proper conveyance in execution of said power.

4th. If not that from the facts as found, the law presumes everything necessary to protect the possession, and therefore presumes that Marsden Campbell joined in the sale and then

made a proper power of attorney to Lord to execute the deed in his name.

5th. That the legal estate of the trustee being barred by the long possession under color of title, the equitable estate of the plaintiffs is also barred.

His Honor being of opinion that the plaintiffs were not entitled to recover, gave judgment in favor of the defendant, from which judgment the plaintiffs appealed.

*Smith & Strong, Battle & Mordecai* and *W. McL. McKay,* for appellants.

*M. London* and *A. T. & J. London,* contra.

PEARSON, C. J.   The will of Mrs. Heron shows on its face that it was written by one who had just enough " law learning " to confuse him and to confound the judges and lawyers who are called on to say what it means.

Why, the draftsman declares a use to the executors for the use of Frances Heron for life, and then for the use of her children, so as to make it a use upon a use, and take it out of the operation of 27 Hen. 8 ; and why he limits the legal estate to the executors of the surviving executor, instead of to the surviving executor and his heirs, which is the technical word to make a fee simple, we are not able to conjecture.   The intention of the testatrix would have been carried out by giving Mrs. Sneade a life estate in the land, with a limitation to such child or children, (and the issue of such as died in her lifetime,) who were living at her death, and should have arrived at the age of twenty-one years, with a power in the executors to join with Mrs. Swann in selling the whole or any part of the land, if in their judgment it was advisable to convert the land into money—then it would have been plain sailing.

We do not concur with his Honor in the opinion that the plaintiffs were not entitled to recover—meaning that the

defendant had acquired the title by adverse possession, and taking that view only, as is done by the pleading and the argument before us, we think that Mrs. Swann took under the will an estate for life in the trust, as distinguished from the use ; in other words, the " use upon the use," and that her trust estate was a general trust and not a special trust; in other words, she was entitled to the possession, and the permanency of the profits, and not merely a right to receive the profits from the hands of the trustees for her separate use and maintenance. We also think that the limitation over of this trust to the children of Mrs. Swann, who answered the description, was valid, whether as a contingent remainder or an executory contingent trust, it is not necessary to decide ; although we incline to the opinion that it could not be upheld as " a contingent remainder," because there is a " possibility upon a possibility," and because the remainder does not depend on the particular estate and await its termination, for there might be twenty-one years between them. But the limitation will be upheld as an executory devise, as it complies with the rule of perpetuity, " and must take effect, if at all, in a life in being and twenty-one years and a few months for gestation."

We also think that the plaintiffs fill the description and are entitled to the estate, unless the land has been transferred under the power or has been lost by reason of adverse possession.

2. The land did not pass in fee simple by the deed executed by W. C. Lord for himself and as agent of Marsden Campbell, and by Mrs. Swann and her husband in 1836.

In the absence of a power of attorney from Campbell to Lord as a part of " the paper title," the power of sale was not executed. " When a power of sale is given to two, it is necessary for both to join in' the deed." *Wasson* v. *King*, 2 Dev. & Bat., 262, it is treated as settled law. Mrs. Swann and her husband also executed this deed with all of the formal-

ities required by law, and as things have turned out, it be-
comes a very important matter to ascertain whether her life
estate passed to Buck, the purchaser.   In 1836, Buck, if he
could not get the fee simple under the power, would not
have objected to taking the life estate under the common
law right of Mrs. Swann to sell it; but now after a long ad-
verse possession, it suits the purpose of the defendant better
to say, "that deed was wholly inoperative."   Buck was a
dissiezor, and the title has ripened under the statute, so as to
give me the true title.   The question in the case is: Did the
life estate of Mrs. Swann pass to Buck by her deed of 1836?
For if it did, then Buck and those claiming under him were
not in adverse possession, and were not exposed to the action
of the trustees as long as Mrs. Swann lived.

That a married woman owning an estate for life in a trust
estate, has *jus disponendi* is laid down in all of the books,
unless there be a restraint upon the power of alienation.
In our case, the defendants counsel took the ground that the
power of sale given to the executors created such a restraint.
We do not think that can be inferred by the true construc-
tion of the provisions of the will—the power has no refer-
ence to the *jus disponendi* of the *life estate*, and leaves that in-
tact, but authorizes a sale of the fee simple, provided the
trustees, deem it to be advisable, as supplemental to the
right to sell the life estate, vested in Mrs. Swann, by force
of her ownership of such estate.   Again, it was said, Mrs.
Swann owned a life estate in a trust, and her deed passed
only the trust, leaving the legal estate in the trustees, whose
duty it was to enforce their legal estate by action.  So Buck's
possession was adverse to them, and their right of action is
barred, *ergo*, the trust estate expectant upon the life estate
is defeated under the familiar doctrine, that when the legal
estate is lost, the trusts dependent on it, whether vested or
contingent, go with it.

Whether by the deed of Swann and wife in 1836 the legal

estate for her life passed to the purchaser by power of the statute (1 Rich., 111), together with the trust, is a question which we are not called on to decide. Mr. Sanders, in his learned treatise on the doctrine of uses and trusts (see pages 36–42), expresses the opinion that a use upon a use does not come within the operation of that statute, for the reason that at the date of the statute this subtle idea had not been conceived, and was only started to evade the statute. 27 Hy. VIII, page 43. This reason in respect to a trust in fee simple is not satisfactory, as it seems to me. The mischief which 1 Rich., 111, was intended to remedy, to wit, a fraud on the purchaser of a use, by a transfer of the legal title to some third person before making a deed to the purchaser, extends equally to the purchaser of a " use upon a use ; " and as the statute in general words provides, " the purchaser of a use shall have the legal estate without a conveyance by the trustee," it would seem to follow that the purchaser of " a use upon a use " should also have the legal estate by this " parliamentary magic," and it will be noted that the exception of " a use upon a use," out of the operation of 27 Henry VIII, is put on the ground that as the statute carries the legal estate to the taker of the first use, it would involve an absurdity if the statute, " *uno flatus*," took the legal estate from the taker of the first use and carried it to the taker of the second use. This reasoning has no application to the purchaser of " a use upon a use," under 1 Richard III, and no attempt was made to evade it by any such subtlety. However this may be, it is clear from all the authorities, and from principle, that the purchaser of a trust estate for life does not acquire the legal estate under 1 Richard III ; there is no provision for *dividing* the legal estate, as is done by 27 Henry VIII ; and if the entire legal estate passes to the purchaser of a particular estate in the trust, the other parts of the trust would have nothing to support them. See *Battle* v. *Petway*, 5 Ired., 576 ; *Badham* v. *Cox*, 11 Ired., 456,

in regard to sales of trusts under execution. Assuming that Buck, being the purchaser of " a use upon a use " for the life of Mrs. Swann, did not acquire the legal estate, but that it remained in the trustees, it is certain that if the trustees had brought an action against Buck or those claiming under him during the lifetime of Mrs. Swann, their action would have been enjoined in equity on the ground that Buck was the assignee of the trust estate, to which Mrs. Swann was entitled for her life. So the trustees could not have maintained an action and recovered posseesion of the land until after the death of Mrs. Swann, in 1871; and, granting to its full extent the rule that when the action of the trustee is barred by the Statute of Limitations the equitable estate of the *cestui que use* is gone also, except so far as there may be a remedy against the trustees for compensation for negligence in permitting the adverse possession to be uninterrupted until it ripened into a good title. In our case the trustees could not have interrupted the possession of Buck during the lifetime of Mrs. Swann ; so, whether the legal title passed to Buck for the life of Mrs. Swann, or whether the legal title continued in the trustees, fettered by the fact that Buck was the assignee of the trust estate for the life of Mrs. Swann, the possession of Buck and those claiming under him, did not become adverse until the death of Mrs. Swann.

For the error of his Honor in ruling that the possession under Buck was adverse, there must be a *venire de novo.* We are not at liberty to give judgment for the plaintiffs on the issues found, for the facts are not set out as on a special verdict, or a case agreed. Perhaps it is well, as the value of the property is large, as shown by the affidavit for removal, that the case should assume in some measure the nature of the old action of ejectment, which did not conclude the title. We think proper to call the attention of the counsel of plaintiffs to the fact, that the complaint has no averments,

as to the executors of J. R. London. Are they living or dead? Did they die testate or intestate? These are matters about which the Court must be satisfied by the pleadings before a judgment can be rendered in favor of the plaintiffs "to have possession of the land and recover damages." They "own a use upon a use"; how are they to get the legal title? Can a *cestui que trust* maintain an action for land, without joining the trustees?

What was the quantity of estate given to the executor of the surviving executor? If only a particular estate, where is the legal estate? Who are the heirs at law of Mrs. Heron, and of the executors of the living executor? These questions are not presented by the pleadings, and were not noticed on the argument, but there must be an adjudication in respect to them, before the case can be disposed of by final judgment. If Mrs. Swann was the heir or one of the heirs of Mrs. Heron, how does that fact affect the operation of her deed to Buck?

The necessary amendments may be allowed in the Court below.

Error.

PER CURIAM.                    Judgment accordingly.