CAMERON v. HICKS.

(Filed April 3, 1906).

*Trusts and Trustees—Statute of Uses—Married Women— Contingent Remainders—Ouster—Adverse Possession— Joint Tenants.*

1. Where a deed conveyed to a trustee and his heirs certain land "to the sole and separate use of A, wife of C, during her life, and after her death to convey the same to such children and their heirs as she may leave her surviving and to the issue of their heirs of such as may be dead, and if during the life of A, she should desire any or all of the said property conveyed in fee or otherwise, to convey the same according to her wishes, she joining in the conveyance as if she were a *feme sole,* though her husband be living," *held,* that the trust declared was active and that the legal title upon the trust declared vested in the trustee in fee; that the mode of conveying or appointing the legal title, prescribed in the deed, applied to both the life estate and the fee; that A was restricted to that mode and could not otherwise divest herself of her equitable estate for life or appoint the fee.

2. Upon the death of the trustee, the legal title descended to his heirs with the trust impressed upon it.

3. Where an estate is conveyed to a trustee for the sole and separate use of a married woman and her heirs, and she becomes discovert, the necessity for preserving the separate estate being at an end, the statute executes the use and she becomes the absolute owner.

4. Where an estate is conveyed to a trustee to preserve contingent remainders, the statute will not execute the use.

5. The deed executed by A and her husband to defendant was a nullity—conveyed no estate legal or equitable, and the defndant's entrance upon the land was an ouster of the trustee and put the statute of limitation in operation against him.

6. When the right of entry is barred and the right of action lost by the trustee, through an adverse occupation, the *cestui que trust* is also concluded from asserting claim to the land.

7. Where the trustee died in 1875, and the defendant went into posses-
sion in 1880, at which time one of the trustee's children was of
age, and A, the *cestui que trust*, died in 1901, leaving the plain-
tiffs as her children, *held*, the trustee, who was of age, being
barred, her co-trustees, who were minors, are likewise barred.

8. The trustees of a trust estate hold as joint tenants and not as
tenants in common, and when one joint tenant is barred, all are
barred.

ACTION by D. A. Cameron and others against E. F.
Hicks and others, heard by *Judge G. W. Ward* and a jury,
at the January Term, 1906, of the Superior Court of
WAYNE.

Edmund Coor on the 3rd day of May, 1870, executed to E.
R. Cox, trustee, and his heirs a deed conveying the land in
controversy "to the sole and separate use of Amanda M.
Cameron, wife of John Cameron, during her life, and after
her death to convey the same to such children and their heirs
as she, the said Amanda, may leave her surviving, and to
the issue and their heirs of such as may be dead, such issue
to represent their ancestors and take such part as he or she
would have taken if living, and if during the life of the
said Amanda she should desire any or all of the said property
conveyed in fee or otherwise, to convey the same according to
her wishes, she joining in said conveyance as if she were a
*feme sole,* though her husband be living." Said deed was
duly recorded in the office of the register of deeds of Wayne
County. The said E. R. Cox, trustee, died June 18, 1875,
leaving surviving certain children and grandchildren, all of
whom were either infants or married women and so remained
to the beginning of this action, August 11, 1902, except one
daughter, Florence Virginia Cox, who became 21 years of
age October 24, 1880, and was married to T. J. Newsome
December 9, 1880. On October 28, 1880, John Cameron
and his wife, Amanda Cameron, executed a deed for the
land in controversy to the defendant, E. F. Hicks, sufficient

CAMERON v. HICKS.

in form to convey said lands in fee simple with full cove-
nants of warranty. There was evidence tending to show that
the said Hicks went into possession of said land, described in
said deed, immediately after its execution and that he and
the other defendants claiming under him have remained in
possession until the beginning of this action. The deed from
Cameron and wife to Hicks recited a consideration of $600.
John Cameron died June, 1881. His widow, Amanda, died
March, 1901, leaving surviving six children, all of whom,
with the exception of A. F. Cameron and J. D. Cameron,
the last of whom died since the beginning of this action, are
parties plaintiff herein, together with the children of J. D.
Cameron. That all the living children and the children of
such as are dead of E. R. Cox, trustee, are parties defendant
herein, together with the grantees of E. F. Hicks, to whom
portions of the said lands were conveyed as aforesaid. The
court charged the jury that if they believed the evidence,
they should answer the issues for the plaintiffs, to-wit: "That
they were each entitled to one-sixth undivided interest of
the land in controversy." Defendants excepted and assigned
the said instruction as error. From a judgment upon the
verdict, defendants appealed.          *new trial*

*Dortch & Barham, W. S. O'B. Robinson, Aycock & Dan-
iels* for the plaintiffs.
*W. C. Munroe* for the defendant.

CONNOR, J., after stating the case: The record, with the
exhaustive and well considered briefs in this appeal, clearly
present the questions upon which the rights of the parties
depend.

The plaintiffs suggest that it is not necessary for them to
combat the principle decided in *Kirby v. Boyette,* 118 N. C.,
244. They say that the cases may be distinguished. In
*Kirby's case* the declaration of the trust was for the separate

use of the married woman and her heirs, whereas, here it is for "the sole and separate use of Mrs. Cameron for, and during her natural life—and at her death to convey to her children, then living, and the issue of such as were dead." This language, it is insisted, brings the case directly within the principle announced in *Swann v. Myers,* 75 N. C., 585. *Chief Justice Pearson* was clearly of the opinion, in that case, that "a married woman owning an estate for life, in a trust estate, has the *jus disponendi,* unless there be a restraint upon the power of alienation." "This," he says, "is laid down in all of the books." No authorities are cited. The trust in that case was for "the separate use and behalf" of Mrs. Swann for her life and then over. It is difficult to reconcile this language with that of *Manly, J.,* in *Knox v. Jordan,* 58 N. C., 175. In that case the English rule is discussed, the cases decided by this court reviewed, resulting in the conclusion that the *feme covert* may alien or encumber her separate estate in execution of powers conferred upon her by the terms of the deed, and if not restricted by the terms may, under the authority of *Frazier v. Brownlow,* 38 N. C., 237, charge the income or profits, etc. The question in regard to the wife's power to deal with her separate estate was before the court in *Withers v. Sparrow,* 66 N. C., 129, where it was held that she could, "with the assent of the trustee," charge it.

Light is thrown upon the language of *Pearson, C. J.,* in *Swann v. Myers,* by referring to his dissenting opinion in *Harris v. Harris,* 42 N. C., 120, wherein it was held that a *feme covert* entitled to a separate personal estate, in the absence of any restraint in the deed, could dispose of it as a *feme sole,* whether there was or was not a trustee. In that case a slave had been conveyed to a trustee for the separate use of a married woman during her life, with remainder over, etc. The court, by *Ruffin, C. J.,* held that, in the absence of any restraint upon her right of alienation, she could

sell the slave.   The decision is put upon the English authori-
ties, citing also *Newlin v. Freeman,* 39 N. C., 312, and
*Dick v. Pitchford,* 21 N. C., 480.   *Judge Pearson* vigor-
ously dissented from the doctrine of "implied power" in the
wife, etc.   He says: "As the *feme* had only a separate use
*for life* in a negro woman   *   *   *   of no annual profit,
and as, for her maintenance, she had a right to dispose of
the profits, and a life estate is only, in fact, a right to the
profits, I should have been willing to put this case upon the
ground that in disposing of her life estate, she disposed of
the profits only."   He sets forth at length his dissent from
the doctrine that, in the absence of any express power to sell
the separate estate, the wife may do so as a *feme sole.   Ruffin,
J.,* in *Hardy v. Holly,* 84 N. C., 661, referring to the ques-
tion of division of opinion in *Harris v. Harris,* says: "When
the question next arose in the case of *Knox v. Jordan,* the
court, as then constituted, without division, and, without any
sort of reservation, repudiated the doctrine of the English
courts and adopted that which prevailed in most of the
courts of the States; and whether this was wisely done or not,
that case has been too often approved and doubtless too often
acted upon in matters intimately connected with the interest
and comfort of families to admit of its correctness being now
called into question."   Although the learned judge writing
the opinion gave to the question, and the authorities, as was
his custom, a most careful investigation, the case of *Swann
v. Myers* is not cited, nor do we find that the learned coun-
sel, who argued the case for the plaintiff, in their exhaustive
brief, called it to the attention of the court.   In *Hardy v.
Holly, supra,* a mode was prescribed in the deed for the dis-
position of the property.   We have carefully and anxiously
examined the authorities and are unable to find any recogni-
tion in those courts, which reject the English doctrine, of a
distinction between the power of a *feme covert* to convey her
"equitable life estate" and her equitable estate in fee.   Prof.

Pomeroy says that the American courts, in regard to this question, may be divided into two classes. "In the first, the courts have adopted the *principle* of the English doctrine. They regard the wife's *jus disponendi* as resulting from the fact of an equitable estate over which she is, partially at least, a *feme sole* and not as resulting from the permissive provisions of the instrument creating such separate estate. It follows, therefore, when the instrument creating the separate estate imposes no express restrictions, that the wife has a general power of disposing of or charging it, even though no such authority is in terms conferred. This power of disposition, however, does not generally extend to the *corpus* of the land for her separate use in fee; it is confined to personal property, the rents and profits of the land, and *perhaps to her life estate in lands.* In the States composing the second class, the courts have widely departed from the principle of the English doctrine. They regard the wife's power over her separate estate as resulting, not from the existence of an equitable separate estate itself, but from the permissive provisions of the instrument creating such estate. They have accordingly adopted the general rule that a married woman has only those powers of disposing of or charging her separate property which are expressly, or by necessary implication, conferred upon her by the instrument conveying the property or creating the trust, and in determining the extent of these powers, the terms of the instrument are to be strictly construed." 3 Pom. Eq. (3 Ed.), 1105; Bispham Eq., section 103. Both these writers place North Carolina in the second class. The dissenting opinion of *Judge Pearson* in *Harris v. Harris, supra,* strongly maintains this doctrine. As we have seen, this dissenting opinion was adopted in *Knox v. Jordan,* and it is upon that decision the doctrine of *Hardy v. Holly* is based. In none of the cases following *Hardy v. Holly* is there any reference to *Swann v. Myers,* or suggestion that as to the equitable life estate the *feme covert*

may convey without the intervention of her trustee, when the deed requires his co-operation. It is not improbable that, in writing the opinion in *Swann v. Myers,* the *Chief Justice* had in mind the English doctrine by which the *feme covert* was permitted to charge the anticipated income, when not restrained, from her separate equitable estate, which he construes in his dissenting opinion in *Harris v. Harris,* as enabling her to dispose of the entire life estate. However it may be, it would seem clear that, in this case, the distinction cannot be sustained. It will be observed that when the trust is declared "for the sole and separate use," or words equivalent thereto, of a married woman, the courts have uniformly held that, because of the presumed intention of the maker of the instrument, the trust is active and the statute does not execute the use. When, as in *McKenzie v. Sumner,* 114 N. C., 425, there is a simple declaration of a trust, as pointed out by *Shepherd, C. J.,* "there is no reason why the legal title is not vested in the *feme covert* by the statute of uses." Whether the rule should have been modified, by reason of our constitutional provision, in regard to the status of married women, as suggested in *Perkins v. Brinkley,* 133 N. C., 154, it is useless to discuss. However this may be, the trust declared by the deed from Coor to Cox is active and the necessity for the separation of the legal from the equitable estate, manifest. There were contingent remainders to be preserved and powers to be executed. This question is discussed and so decided, in accordance with all of the authorities, in *Swann v. Myers, supra.* It may be that the correct doctrine is to be found by reading the language of *Ruffin, J.,* in *Hardy v. Holly, supra,* in the light of what is said by *Smith, C. J.,* in *Norris v. Luther,* 101 N. C., 196, and *Clayton v. Rose,* 87 N. C., 106. This would seem to lead to the conclusion that, in the absence of any permissive provisions in the deed, the wife could not convey her equitable separate estate, either for life or in fee, as a *feme sole,* but could do so in the man-

ner prescribed for the conveyance of her statutory separate estate, by joining with her husband and privy examination. However this may be, we are not called upon at this time to enter upon this debatable ground.

There is another view of this case which we think conclusive upon the power of Mrs. Cameron to convey any interest in the land. After declaring the trusts, the grantor directs the trustee "if during the life of the said Amanda she should desire any or all of said property conveyed in fee or *otherwise,* to convey the same according to her wishes, she joining in said conveyance as if she were a *feme sole,* though her husband may be living." In *Swann v. Myers, supra,* the will gave to the trustees the power and directed them "in the soundness of their discretion" to "join with the *cestui que trusts* in making any conveyance of the above property." *Judge Pearson,* writing for the court, construed this language to be a restraint upon the power of alienation as to the fee. This ruling, so far as it refers to the fee, is in harmony with all of our decisions and those of other States, which hold that when a mode of alienation is prescribed in the instrument, it must be followed. *Hardy v. Holley,* and *Norris v. Luther, supra; Towles v. Fisher,* 77 N. C., 437; *Mayo v. Farrar,* 112 N. C., 66; *Monroe v. Trenholm, Ib.,* 634. This is the only logical conclusion from the premise stated in the cases in this court, at which it is possible to arrive.

It will be observed that in our case the mode is expressly prescribed and applies to conveyances "in fee or otherwise." We therefore do not depart from the principle announced in *Swann v. Myers,* in that respect, in holding that there is to be found in the deed of settlement an express mode prescribed for disposing of either the life estate or the fee. That such was the intention of the maker of the deed is, we think, seen in the fact that the husband is not required to join in the conveyance, but the wife is to act in that respect as if she were "a *feme sole,* though her husband may be living." It

was the manifest purpose of Mr. Coor to remove Mrs. Cameron, in respect to the sale of this property, from both the influence and protection of her husband and vest in the trustee the sole power to convey "in fee or otherwise, according to her wishes, she joining in said conveyance." To permit her and her husband to convey the land thus secured to her, without the intervention of the trustee, would be doing violence to the express language and manifest intention of the maker of the deed of settlement. If the land had been conveyed directly to Mrs. Cameron, the Constitution imposed upon her power of alienation the necessity for the assent of her husband. The deed under which she acquires her equitable estate—the right to the sole and separate use of the land—substitutes the trustee for the husband in respect to the conveyance. *Pippen v. Wesson*, 74 N. C., 437; *Scott v. Battle*, 85 N. C., 184.

It is well settled that upon the death of the trustee, the legal title descended to his heirs with the trust impressed upon it. *Clayton v. Rose, supra;* Perry on Trusts, 341. It seems equally well settled that if the trustees, being clothed with a power as in this case of conveying the legal title by direction and appointment of the *cestui que trust,* dies before its execution, the power is gone and cannot be executed. Sugden on Powers, 319. In *Barber v. Cary,* 11 N. Y., 397, it is said: "But the power could only be executed on the precise conditions prescribed by the terms of its creation, viz., by and with the consent of H. The first question is whether the death of H., which occurred before the execution of the power, was fatal to the conveyance. The rule of law is settled that when consent of third persons is required to the execution of the power, that, like every other condition, must be strictly complied with. If the person, whose consent is necessary, die before the execution of the power and without having assented, the power is gone although his death was the act of God." 22 Am. & Eng. Enc. (2 Ed.), 1122. It

would seem, therefore, that upon the death of the trustees, the condition upon which Mrs. Cameron could execute the power to direct the conveyance, was gone. It may be that, as no discretion was vested in the trustee, but that he was directed to convey "in fee or otherwise according to her wishes," Mrs. Cameron may have had, either by the clerk under the statute or by a civil action in the nature of a bill in equity, another trustee appointed with power to convey as she directed. This was not done, and her deed cannot operate as the exercise of her power of appointment. *Towles v. Fisher, supra.*

The suggestion that because the heirs of Mr. Cox were infants, the legal estate did not descend to them charged with the trusts, is met by what is said in *Claylon v. Rose, supra:* "After the death of the original trustee, and when the legal estate had descended, clothed with the trust to his infant children," etc. It is suggested that upon the death of Mr. Cameron, the statute of uses operated by "Legal Chemistry" or "Parliamentary Magic," to execute the use and unite the legal and equitable estates in Mrs. Cameron for life, leaving to the trustee or his heirs the remainder in fee for the purpose of preserving the contingent remainders, and conveying to those who might be entitled upon Mrs. Cameron's death. It is well settled that when there is a conveyance to trustees for the sole and separate use of a married woman and her heirs, and she becomes discovert, the necessity for preserving the seperate estate being at an end, the statute executes the use and she becomes the absolute owner. *Monroe v. Trenholm, supra; Stacy v. Rice,* 27 Penna. St., 75; Perry on Trusts, 653. It is equally true that where an estate is conveyed to trustees to preserve contingent remainders, the statute will not execute the use. The legal title must remain in the trustee, because, as in this record, no one in existence could call for the legal title. It was uncertain who would be entitled upon the death of Mrs. Cameron, and

this uncertainty continued until the moment of her death. *Latham v. Lumber Co.,* 139 N. C., 9. In *Battle v. Petway,* 27 N. C., 576, *Ruffin, C. J.,* says: "Beyond doubt, equity would not compel nor allow the trustee to convey the legal estate to the tenant for life, but require him to retain it for the security of the remainderman. And so in case of a contingent limitation over, it would be the duty of the trustee to retain the title and control over the possession of the trust property; and the court of equity will not take it from him." We therefore conclude that the trust declared in the deed from Coor to Cox was active, and that the legal title upon the trusts declared vested in Cox in fee; that the mode of conveying or appointing the legal title, prescribed in the deed, applied to both the life estate and the fee; and that Mrs. Cameron was restricted to that mode and could not otherwise divest herself of her equitable estate for life or appoint the fee.

The deed executed by Mrs. Cameron and her husband to Hicks was therefore a nullity, conveyed no estate, either legal or equitable. Hicks' entrance upon the land was therefore an ouster of the trustee and put the statute of limitations in operation. At the expiration of the statutory period his possession would have ripened into a perfect title, both as against Cox, if living, and his *cestui que trust* and her infant children. This rule of law is too well established and has been too often enforced with its variant results to be now called into question. *Smith, C. J.,* in *Clayton v. Rose, supra,* in applying the principle, where it was sought to bar the *cestui que trusts,* said: "Nor do we think the defendants can protect themselves under a seven years' adverse possession with color of title. It is conceded that when the right of entry is barred and the right of action lost by the trustee, or person holding the legal estate, through an adverse occupation, the *cestui que trust* is also concluded from asserting claim to the land. And the correlative must be accepted that when the

trustee is not barred, neither can the *cestui que trusts* be, since as against strangers they are identified in interest. The alleged hostile possession by the defendants began after the death of the original trustee, and when the legal estate had descended clothed with the trust to his infant children, and this disability prevents the statute from starting to their prejudice." In some cases it operates to destroy and in others to preserve titles. Courts may not shrink from enforcing it and thereby introduce confusion on account of hard cases. *Kirkman v. Holland,* 139 N. C., 185; *King v. Rhew,* 108 N. C., 696. The doctrine is clearly stated and treated as settled in the opinion from which the plaintiffs seek safety, in *Swann v. Myers, supra.* The resourceful and learned counsel for plaintiffs say that the rule does not militate against their contention in this case, because in *King v. Rhew,* the wife was not, as construed by this court, a party to the deed, while here she was a party, executed it and submitted to a private examination as provided by the statute. The counsel call to our attention the language of the court in that case: "The deed then can only be regarded as that of the husband, as he had no interest which he could have conveyed, the trustee could have maintained an action at any time against the defendants for the possession of the property." The difficulty in the argument, based upon this language, is found in the fact that, a deed made by a married woman otherwise than as she is empowered by the law, is as much a nullity as if she had not signed at all, or as if she had signed a piece of blank paper. *Askew v. Daniel,* 40 N. C., 321.

*Ruffin, J.,* in *Scott v. Battle, supra,* speaking of the deed of a married woman, without compliance with the provisions of the statute, says: "It prescribes the terms and without their strict observance the act stands as it would at common law—absolutely null and void." In *Green v. Branton,* 16 N. C., 500, it is said that her deed, not executed as the law requires, is an absolute nullity under which no equity

whatever can be set up. *Towles v. Fisher,* 77 N. C., 438; *Jones v. Cohen,* 82 N. C., 75. If the trustee had sued Hicks for the possession it is manifest that the deed of Mrs. Cameron could not have been used to bar his action. This is the test by which to ascertain the character of Hicks' possession as against the trustee and, thus tested, we are of the opinion that such possession was adverse to the trustee and the statute of limitations, was put into operation against the trustee. The reasoning of the court in *Swann v. Myers,* as to the effect of the deed made by Mrs. Swann upon the right of the trustee to recover possession is based upon the theory that her deed conveyed the equitable life estate and is therefore not applicable here. The plaintiffs say that Cox having died in 1875, the legal title descended to his heirs who were at that time infants and were unable to execute the trusts, convey the legal estate or protect the possession. This is true, and as said in *Clayton v. Rose, supra,* the statute did not run against them; their disability enured to the benefit of the *cestui que trust* and protected their estates against the adverse possession of Hicks. The rights of Mrs. Cameron and her children were absolutely secured by the infancy of the trustees and no act, either of themselves or persons claiming under them, could destroy or affect their estate. Conceding that the power to convey the estate was suspended by the death of Cox, during the minority of his heirs and that no ouster under color or otherwise could ripen into title against them, the plaintiffs have no cause to complain of the law which secured their estate from harm by acts of themselves or strangers.

We are thus brought to a consideration of the last question presented by the exceptions. Are the trustee's heirs at law of Cox barred by their right of entry? At the date of Hicks' entry, October 28, 1880, they were all, except Florence, under disability and have so continued until the date of the summons, August 11, 1902. Florence reached her majority

141——3

October 24, 1880, and married December 9, 1880. Hence, for one month and eleven days she was under no disability. The statute ran against her and it is elementary learning that when the statute begins to run, no subsequent disability interferes with it. Hicks and those under him have, therefore, been in the adverse possession twenty-one years and a few months and prior to the beginning of this action. If the heirs of Cox, trustee, held the legal estate as tenants in common, they would recover in respect to their separate interests. The defendants insist that they held as joint tenants and not as tenants in common. This is not controverted by plaintiff and seems to be sustained by the authorities. "Trust property is generally limited to trustees as joint tenants. * * * · Therefore, upon the death of one of the original trustees, the whole estate, whether real or personal, devolves upon the survivors, and so on to the last survivor. If he has made no disposition of the estate by will or otherwise, it devolves upon his heirs, if real estate, and upon his executors or administrators, if it is personal estate." Perry on Trusts, 343 ; 17 Am. & Eng. Enc. (2 Ed.), 659 ; Revisal, sec. 1580. It seems to be well settled that joint tenants must sue jointly, differing in that respect from tenants in common. Mr. Freeman says : "Whenever the title of the co-tenants, as in the case of joint tenancy and co-parency, is joint, the action must also be joint, and whenever, as in tenancy in common such tenant is deemed to possess a separate and distinct estate, the remedy of each must be separately and distinctly pursued. Joint tenants being seized *per my et per tout* and deriving but one and the same title, must jointly implead and be impleaded. If twenty joint tenants be, and they be disseized, they shall have, in all their names, but one assize because they have but one joint title." Cotenancy, 329. To the same effect is Sedgwick & Wait Trials, etc., section 302. It was at one time held in this State that two tenants in common could not join in one demise, because there was no

unity of title—one might recover and the other fail. It was afterwards held, for the reason set out by *Ruffin, J.,* in *Hoyle v. Stowe,* 13 N. C., 318, that they could join in one demise. He says: "It is the universal rule, that the title must be truly stated in the declaration. A joint demise, therefore, can only be supported by showing a title in each to demise the whole. If one of the lessors has no title, the plaintiff must fail." He says that this is "common learning." An examination of the opinion shows the ground upon which tenants in common are permitted to make a joint demise and recover in respect to their interests. *Allred v. Smith,* 135 N. C., 443. The difference is in this: Joint tenants must join in one demise because of the essential unities, tenants in common may join, or, if they prefer, may sue separately because there is no unity of title. It would seem to follow that joint tenants must recover in respect to their title, and if they fail in that, they cannot recover at all. This is the doctrine of this court. *Riden v. Frion,* 7 N. C., 577, was an action by three joint owners of a slave. Two of the plaintiffs were barred, the third under disabilities. *Taylor, C. J.,* said: "Whenever the statute of limitations is a bar to the recovery of one of the parties, in such action, it operates against the whole, because the disability of one does not save the rights of the others." The case was approved in *McRee v. Alexander,* 12 N. C., 321, *Henderson, J.,* saying: "In a joint action brought by several, when the defendant avails himself of the bar given to such action, by the statute of limitations, all the plaintiffs must bring themselves within some of the savings of the statute, otherwise the bar is not avoided. The decisions on this point are uniform, as far as I know, and I shall not now enquire whether they are founded on the technical reason that the action being joint, all or none of the plaintiffs must recover, otherwise the judgment does not pursue the writ and declaration or whether on the very words of the statute." The learned

justice severely criticises the rule. In that case the lessors of the plaintiffs were tenants in common and the rule so justly criticised, as applied to tenants in common, no longer obtains, although a joint demise be laid or, under our Code practice, the several interests be shown, either in the complaint or the evidence, the plaintiffs recover accordingly. This cannot be so when the plaintiffs are joint tenants, they must all recover or none can do so. *Montgomery v. Wynns,* 20 N. C., 667. In *Weare v. Burge,* 32 N. C., 169, the same rule is recognized. The statute, Revisal, section 374, changes the rule in regard to personalty. (See Clark's Code, section 173). It does not affect the law as to real property. *Expressio unius exclusio alterius.* When we go beyond our own reports we find the same principle enforced. *Marstella v. McLean,* 7 Cranch., 156, was an action of trespass. *Judge Story* held, for the court, that if one of the plaintiffs was barred all were. That if they were compelled to join in the action, that result necessarily followed. Vol. 1, Roses Notes, 156. In *Hardeman v. Sims,* 3 Ala., 747, it is said: "It was contended on the argument, that the exception in the statute in favor of infants would take the case out of the statute, notwithstanding one of the complainants was barred by the statute. We understand it to be the settled rule that when a joint right of action accrues to several, the right must exist in all at the time of the action brought. When the statute begins to run as to one of several parties to a joint action, it runs as to all."

The law was so ruled in *Perry v. Jackson,* 4 Term. Rep., 516. It is true that the contrary doctrine is laid down in Vol. 19, Am. & Eng. Enc. (2 Ed.), 182. It will be found that the North Carolina cases cited do not sustain the text as construed by plaintiffs' counsel. In *Cladwell v. Black,* 27 N. C., 463, the plaintiffs were tenants in common, and while, under the rule prevailing in this State, they might join in one action, yet when thus joined they recovered in

CAMERON v. HICKS.

accordance with their several rights. In *Carson v. Carson,*
122 N. C., 645, the plaintiffs were tenants in common.

We have given to this subject a most careful consideration,
examining the authorities and decided cases from other
courts. They are not uniform. In several States it is held
that where there is a joint action by tenants in common, if
one is barred, the action fails as to all. The true rule would
seems to be that, except where the necessity for all parties in
interest to join "is founded upon the nature° of the interest
in the particular property" the plaintiffs recover in accord-
ance with their rights as developed upon the trial—in other
cases they must all show a right to recover when the action
is brought. Statutes have been enacted in many of the
States, permitting any one or more joint tenants and tenants
in common to sue. Pomeroy Code, Rem., 137, note; 11 Am.
& Eng. Enc., Pl. & Pr., 771. The possession of Hicks and
those defendants claiming under him has continued for more
than twenty-one years, during all of which time the statute
has been in operation against Florence Cox, now Mrs. New-
some. She is clearly barred, and the conclusion must follow
that her co-trustees are also barred.

We think the statute well pleaded. The claim of both
plaintiffs and defendants is based upon what may be termed
"technical rules of the law." If we should adopt the plain-
tiffs' contention that in respect to this property Mrs. Cam-
eron should be treated as a *feme sole,* there would seem to
be no very good reason why we should not find in her deed to
Hicks a clear intention to execute the power conferred upon
her to convey in fee, and aid its defective execution by ad-
judging the holders of the legal title trustees for the benefit
of the defendants, who appear to be purchasers for value.
The plaintiffs were objects of Mr. Coor's bounty, contingent
upon Mrs. Cameron's failure to exercise the power of ap-
pointment. There is much force in the facts shown by
the defendants to sustain an equitable estoppel upon the
plaintiffs.

CAMERON *v.* HICKS.

The case is fraught with perplexities. Many of the principles of the common law regarding titles to real property are difficult to sustain upon the "reason of the thing." We find wisdom in the language of *Earle, J.,* in *Bertles v. Nunan,* 92 N. Y., 152. To the suggestion that the reason upon which a common law rule was founded had ceased to exist, he said: "It is impossible now to determine how the rule of the remote past obtained a footing, or upon what reason it was based, and hence it is impossible now to say that the reason, whatever it was, has entirely ceased to exist. There are many rules appertaining to the ownership of real property originating in the feudal ages, for the existence of which the reason does not now exist or is not discernible, and yet on that account courts are not authorized to disregard them. They must remain until the Legislature abrogates or changes them, like statutes founded upon no reason, or reasons that have ceased to operate."

When men undertake to place their property out of the usual and fixed channels of alienation and descent, it frequently happens that their best considered plans fail to be accomplished, or, if accomplished, bring about the results not anticipated. There has been no more prolific source of litigation, with difficult questions to be solved, than the creation of trusts for the benefit of married women, and attempting to control the passing of the property into the possession of posterity. To the end that the rights of the parties may be adjudged upon the principles herein laid down, there must be a

New Trial.