JESSE A. NORRIS v. HENRY C. LUTHER and WIFE.

*Costs—Married Women—Mortgage—Trust and Trustee—Deed.*

1. The prevailing party in an action may be adjudged to pay the costs incurred in an unsuccessful attempt to enforce his judgment.

2. In pursuance of an ante-nuptial contract real estate was conveyed to a trustee "for the sole and separate use of " the wife—subsequently she, by deed duly executed by her and her husband, mortgaged her estate in the property, but the trustee did not join therein. In proceedings to foreclose, the trustee was made party : *Held* (1), that the mortgage was not invalid by reason of the omission of the trustee to join therein ; and (2), that a sale under a decree of the Court would vest in the purchaser the legal and equitable title to such interest as the wife had under the trust.

This was a MOTION IN THE CAUSE, heard and determined by *Avery, J.*, at August Term, 1888, of WAKE Superior Court.

The plaintiff, claiming title to a parcel of land, brought his action against the defendants to recover possession. The defendants, in their answer, denied his right to said land, and set up divers other defences against his demand.

Before being allowed to plead to the action the defendants were required to give " an undertaking with good and sufficient surety under the provision of Sec. 237 of *The Code*, in a sum not less than $200, to secure such costs and damages as the plaintiff might recover in the action ;" being unable to give which they executed, in the prescribed forms of law, a mortgage deed to the plaintiff, conveying to him another tract of land belonging to the *feme* defendant, as separate estate, with condition of avoidance if the " defendant shall pay such costs and damages as may be adjudged the plaintiff," and in default thereof, vesting in the mortgagee a power of sale to raise the necessary amount, not exceeding $200. *The Code*, §117.

At Fall Term, 1885, of the Superior Court of Wake, the issues joined were tried, resulting in a verdict for the plaintiff.

Judgment was entered up according to the verdict, and under an execution issuing thereon to the Sheriff, the plaintiff was put in possession of the premises, but the money needed to satisfy the recovery of damages and costs could not be made, and so the officer having it in hand made return at February Term of said Court, next ensuing.

On February 7, 1887, a notice, signed by the plaintiff and his counsel, issued to the defendant that at the term of the Superior Court next to be held on the last day of that month, a motion would be made for an order of sale of the land embraced in the mortgage security, to the end that $200 of the proceeds thereof be applied to the said judg-

ment, and the Sheriff, by his deputy, J. D. Lewis, in whose hands it was placed, made return endorsed thereon in these words: "Received February 7, 1887. Served February 9, 1887. J. Rowan Rogers Sheriff, by J. D. Lewis, D. S."

The defendants, not appearing, upon motion of plaintiff's counsel for judgment for foreclosure of mortgage and an order of sale of the land, the Court, after reciting what had before been done in the premises, adjudged:

"That the defendants, Henry C. Luther and his wife, Elizabeth J., have until the first day of June, 1887, within which to pay the plaintiff, Jesse A. Norris, the sum of $200, in part of said damages and cost, and if they fail to pay the said sum by the first day of June, 1887, then that the land described in the mortgage, to-wit:" (repeating the description) "be sold by D. Reid Upchurch—who is hereby appointed a commissioner of this Court for that purpose—at the court house door in Raleigh, for cash, and out of the proceeds of sale after said sale has been confirmed by the Court, the costs and expenses of this motion and of said judgment be first paid; that out of the residue, $200, be paid to Jesse A. Norris, and the residue, if any, be paid over to Henry C. Luther and his wife, Elizabeth J. Luther. Before selling said land the commissioner shall advertise the same for thirty days in the *Evening Visitor*, a newspaper published in Raleigh, N. C. Said commissioner shall report his action and sale under this judgment, to the next civil term of the Court following his making said sale, and await the confirmation of his report and sale before making title to the purchaser."

Underneath the record of this judgment, as sent up, is this memorandum:

"I am not now of counsel for the defendant.

T. P. DEVEREUX."

The sale was accordingly made and the report thereof confirmed at August Term, J. J. Rogers being the last and highest bidder for the sum of $400, and no exception taken thereto. The judgment allows the commissioner for his services and making the deed $15, and directs title to be made to the purchaser, on payment of the amount of his bid, and directs how the fund shall be disposed of.

The land mentioned in the mortgage had been conveyed to one D. P. Teague, a trustee appointed in certain proceedings instituted in the Court of Equity of Chatham County to enforce and give effect to a marriage contract entered into between the said H. C. Luther and Elizabeth J. (then Teague) in September, 1851, just prior to such intermarriage, " in trust for the sole and separate use of the said Elizabeth J. and the heirs of her body in fee simple." The trustee had not been made a party to the action in which the mortgage was made, nor did he join in the execution of the mortgage itself.

Being advised by counsel of the defect in his title to the land sold by the commissioner, by reason of the absence from the proceeding for the foreclosure and sale of the trustee in whom the legal estate was vested, the purchaser Rogers, during the same term, applied to the Court to cause the said D. P. Teague to be made a party, and such action taken as would bind and conclude him, or to relieve him, the said Rogers, from his purchase. Thereupon summons was ordered to issue to the trustee, and at the succeeding term the plaintiff filed his complaint against him, setting out the facts of the case, and requiring him to show cause against the confirmation of the sale. The summons was first issued on September 14th to the Sheriff of Durham, who was unable to find Teague, and upon its return an alias summons issued to the same officer, returnable to February Term, 1888, which was served on the 3d day of November preceding.

The trustee having failed to appear, judgment was entered, which, after recitals of what had preceded, confirmed the report of sale and the antecedent action of the Court in the premises, and substituted Charles D. Upchurch in place of the other commissioner, who had become incompetent, to proceed and execute the judgment.

At August Term, 1888, the said Rogers, who had paid the purchase money and taken a deed for the premises, applied to the Court for a writ of assistance to put him in possession, supported by his own and the affidavit of others of his effort to get possession and the resistance of the defendants thereto.

Notice was given of the intended application to be made (and which was made) to the Court at that term, and having been placed in the hands of the Sheriff, he makes this return:

" Received 16th day of August, 1888.   Served by delivering a copy of the within notice to H. C. Luther and wife this 16th day of August, 1888, at 9:09 o'clock.   Read to H. C. Luther and wife on the date above mentioned.

J. ROWAN ROGERS, *Sheriff.*"

The *feme* defendant met this motion with an affidavit, in which she denied that the notice purporting to have been served on her on February 9, and so returned and endorsed by the Deputy, was ever served on her, or that she had knowledge or notice of the proceeding for foreclosure and sale under the mortgage, and that whatever was done in furtherance thereof, she insists, was irregular, invalid and void, and the purchaser ought not to have the aid of the Court in dispossessing her of the land.

At the hearing the said Rogers moved for the issuing of the writ whereof he had given notice to the defendants, and the defendants asked that the decree of sale and the sale itself be set aside and vacated.

To ascertain the facts about which the evidence was contradictory, at the instance and with the consent of counsel of all parties, new issues were laid before the jury, which, and the responses, are as follows:

1. Was the notice from Norris to Luther and wife, purporting to have been served by the Sheriff through his deputy Lewis, in reality served on said day by Lewis on both by reading the paper to both? The answer is, No.

2. Was the notice served on H. C. Luther by reading the paper to him? The answer is, Yes.

In addition to the jury finding, after hearing the various exhibits and proofs and admissions of counsel, the Court found the further facts:

1. That no copy of the notice filed in the record was ever served on or left with either of the defendants, except that the notice was read to the defendant H. C. Luther, as found by the jury.

2. That Elizabeth Luther had no notice of the motion for a decree of sale of the land mortgaged by defendants, nor of the rendition of said decree, or the sale in pursuance of the decree, until the service of notice of the motion for a writ of assistance on the __ day of ____, 1888.

3. That the land mortgaged was sold by virtue of said decree, and purchased by J. J. Rogers for the sum of four hundred dollars, but was then, and is now, in fact, worth more than five hundred dollars, and somewhere between five hundred and one thousand dollars.

4. That the purchase money, four hundred dollars, has been paid by said J. J. Rogers, and is in the hands of the Clerk of the Court, and is held by him subject to the order of the Court.

5th. That D. P. Teague, trustee, had no notice of the decree or order for the sale of the land until notice issued to him after said sale, making him a party, but that said Teague had notice of the order confirming said sale. * * *

The Court finds further, that the land described in the mortgage deed was purchased with funds arising from the sale of lands held by D. P. Teague, trustee, in trust for the *feme* defendant, Elizabeth Luther.

Whereupon it is ordered and adjudged by the Court:

1st. That the decree of sale, heretofore made in this cause, of the land conveyed by mortgage deed by the defendants, be vacated and set aside, and that the sale made in pursuance of said decree be set aside.

2d. That J. J. Rogers surrender to the Clerk of the Court the deed made to him for said land, and that the said deed be cancelled, and that the purchase money paid by said J. J. Rogers be returned to him.

3d. That unless the defendants shall have paid, or caused to be paid into Court the sum of two hundred dollars, on or before December 1st, 1888, to be applied to the payment of costs and damages recovered of them in this action, the Clerk of the Court, who is appointed a commissioner for that purpose, shall, after advertising the land described in said mortgage deed for four successive weeks, in some newspaper published in Raleigh, sell said land to the highest bidder for cash, at the court house in Raleigh, and pay the fund arising from said sale into Court, to await the further order of the Court.

It is further ordered and adjudged by the Court, that the defendants recover of the plaintiff, Jesse A. Norris, the sum of _____ dollars, costs that have accrued since the date of notice issued at the instance of said Norris, on the __ day of February, 1888.

The Court declined, at the request of counsel, to adjudge and declare whether D. P. Teague, trustee, is concluded by the decree, or any sale made in pursuance of said decree.

From the judgment, taxing him with the costs incurred in attempting to enforce the sale, the plaintiff appealed, and

from the judgment, directing the land to be sold in the event the money was not paid at the time ordered; the defendant appealed.

*Mr. S. F. Mordecai,* for the plaintiff.
*Mr. Chas. M. Busbee,* for the defendant.

SMITH, C. J., (after stating the case.)   The controversy which has grown out of the action taken to enforce the mortgage security, has been essentially between Rogers the purchaser and the defendant, in the application for the writ of assistance.   The record, without assigning any specific error, contains a memorandum with the words " Appeal also by the plaintiff" from the judgment of the Court, and we can only entertain his complaint of the concluding clause, that taxes him with the costs specified therein.

In this we find no error, for it was the plaintiff's own folly to proceed in the effort to uphold a sale which the Court declares to have been improperly ordered and to be void.   The . plaintiff's appeal cannot, therefore, be sustained, and the ruling complained of by him is affirmed.

We now proceed to consider the exceptions to the rulings in the

DEFENDANT'S APPEAL.

These are:   1. For that the *land* described in the mortgage ought not to be sold, but only such estate, if any, which the defendants, or either, had therein; and 2. For that the trustee not having united with the defendants in executing the mortgage it is inoperative to pass the interest or estate of the defendants, and especially of the *feme* defendant, in the land, and it is void.

1. The first exception cannot be sustained, for the obvious reason that only such interest as the parties to the suit have in the land can pass under a sale pursuant to the judgment

and the deed, though it use a descriptive word of larger import than the interest to be conveyed, its operation would be restricted to that interest. In the present case, the trustee becoming a party in whom the legal estate resides, it is appropriate, to the divesting both the legal and equitable estates, and transferring them to the purchaser, for why should they remain distinct, when the only purpose to be attained in having a trustee is to protect the separate estate of the *feme* during coverture, and the necessity for such trustee ceases alike when the coverture ceases, and when the trust estate passes to one who is *sui juris* and free from disability.

The remaining disability points to the assumed invalidity of the deed itself because the assent of the trustee to its being made is wanting.

The argument to sustain this rests essentially, as we understand it, on the ruling in *Hardy* v. *Holly*, 84 N. C., 661. That decision does not support the present contention. In that case the deed of marriage settlement transferred the estate of the *feme*, on the eve of her marriage, to a trustee, for her separate use and benefit after entering into coverture, " and subject to her exclusive control and disposition, as if she was a *feme* sole by order or other writing under her hand and seal and directed to said trustee," &c.

Its declaration of trust further provided that the *feme* should "have power in writing to direct, and when so directed, it shall be the duty of said trustee to exchange and convert the whole or any part of the trust fund into other property," &c., subject to the same trust, &c.

The Court held, as the deed provided the mode in which the *feme* while *covert* might exercise control over the fund and direct its disposition, the power must be exercised in the manner pointed out in the deed, and a conveyance under the statute would be, and was, unauthorized and

ineffectual. The subject was thoroughly discussed by our late able associate, Mr. Justice RUFFIN, and the principle so announced.

The marriage contract and the deed made to carry it into effect in the present case, contains no directions as to the exercise by the *feme covert* of her power of disposition of the trust property. In the former the husband undertakes to relinquish all claim to her estate, and that it shall remain "for the use, behoof and benefit of her and the heirs of her body," adding, "to have and to hold to her, the said Elizabeth Teague and the heirs of her body, free from the power of alienation by him, the said Henry C. Luther, and exempt from the claims of his creditors."

The deed, made pursuant to the contract, to the trustee appointed in place of the husband, declared to be such, uses similar words in defining its trusts and the land purchased with the proceeds of sale of the land of the *feme,* owned at her marriage, as authorized by the Court in another proceeding, from M. A. Rogers and wife, and conveyed in their deed of December 9, 1879, to the trustee, Teague, defines the trusts as being "*for the sole and separate use of the said Elizabeth J. Luther and the heirs of her body,*" and the same terms are used in the *habendum* clause of the deed.

This is the land the defendants intended and undertook to convey in their mortgage deed, which is executed and acknowledged with the private examination, as required by *The Code,* § 1246, paragraphs 5 and 6.

While the terms of the contract and the subsequent deeds use words that would create an estate tail at common law and a fee simple under the Act of 1784, the decree declares the trust attaching to the deed to the trustee to be "*for the sole and separate use of said Elizabeth Jane and the heirs of her body, for, and during the natural life of said Elizabeth Jane, and at the death of said Elizabeth Jane, for the sole use of said Henry C. Luther and the heirs of the body of said Elizabeth Jane.*"

It is not necessary to inquire in this discrepancy in the declaration of trusts, what is its legal effect upon the trust estate, and whether the children of Elizabeth have any vested trust estate in the land since the sale made pursuant to the judgment, could only pass to the purchaser such title as the trustee and the defendants, parties to the proceeding, had in the premises respectively, whatever that may be.

There is no error in the judgment, in this regard, and so it must be affirmed in both appeals.

Affirmed.