JOSEPH H. HARDY and others v. AUGUSTUS HOLLY.

*Marriage Settlement—Power of Feme—Mortgage.*

Where a feme sole makes a deed of marriage settlement of her separate estate, whether real or personal, to a trustee for her sole and separate use, her power of disposition over the same during coverture is limited to the mode and manner prescribed by that instrument. And if she and her husband join in a mortgage conveying her estate without the

knowledge or consent of the trustee and outside of the powers conferred. such deed is invalid. (Review of the English doctrine and cases upon this subject by RUFFIN, J.)

(*Frazier* v. *Brownlow*, 3 Ired. Eq., 237; *Harris* v. *Harris*, 7 Ired. Eq., 111; *Knox* v. *Jordan*, 5 Jones Eq., 175, cited and approved.)

MOTION for an injunction, in an action pending in BERTIE Superior Court, heard at Chambers on the 24th of October, 1879, before *Avery, J.*

On the 19th of November, 1866, a deed was executed between Ella E. Hardy, John H. Hardy and Joseph H. Hardy, whereby, after reciting that a marriage was soon to be had between the said John H. and Ella E., and that it had been agreed between them that certain personal estate of the latter should be conveyed in trust to her sole and separate use and free from the control of her intended husband, the said Ella E. conveyed to the said Joseph H. certain bonds and notes belonging to her and then in her possession, "in trust for the sole and separate use of the said Ella E., after and during her coverture and subject to her exclusive control and disposition, as if she were a feme sole, by order or other writing under her hand and seal and directed to said trustee, as well principal money as interest; and to account with and pay over to her all accruing interest and profits arising therefrom, from time to time as collected, and for such payment her receipt shall be a full discharge, and her written order ample and sufficient authority for any disposition of the fund which she may direct; and in trust, in the event of the death of the said Ella E., the said John H. surviving, for such person or persons, in such estate and upon such limitations as she shall appoint, declare and direct by will or other writing in the nature of a last will, executed in her lifetime, and in form to pass such estate and funds as may then remain, and in default of such appointment, for such persons as would by law be entitled thereto as next of kin and heirs at law under the statute of distri-

butions and laws of descent, to the said Ella E., (excluding her intended husband) in like manner as if she were un-married at the time of her death ; and in further trust that at all times during her coverture, the said Ella E. shall have power, in writing, to direct, and when so directed it shall be the duty of said trustee to exchange and convert the whole or any part of the trust fund into other property, real or personal, and to invest and re-invest the same, and the proceeds thereof as she may require in the purchase of other and different estate and funds, and such substituted property shall become and shall be held charged with the same trusts as attached to that for which it was substituted ; and it is agreed that said Ella E. shall have power to change the trustee, and upon her nomination in writing, it shall be the duty of said trustee to convey the trust property to the person nominated to be held upon the same trust, &c. Which deed was duly proved and registered in the register's office of Bertie county where the parties all lived.

Soon after the execution of the deed, the proposed marriage took place, and the said Joseph H. accepted the trust and has ever since continued to act as trustee. In 1870, the trustee, in pursuance of his powers, invested some four thousand dollars of the trust fund in a certain tract of land, situate in Bertie county, which was conveyed to him upon the trusts declared in the deed of settlement. In October, 1875, the husband, John H. Hardy, applied to the defendant, Holly, for a loan of $1,500, to be used in conducting a mercantile business, which the latter agreed to make provided the wife would join in a mortgage, conveying the said tract of land as a security for the amount advanced, to which she assented and the mortgage was duly executed by the husband and wife and regularly proved and registered and the money procured upon it—the trustee, Joseph H. Hardy, however, being no party to it or assenting thereto or having any notice thereof; and no request being made to

him by the wife in writing under seal or otherwise, to become a party to the mortgage deed or in any way to charge the land, or other part of the trust fund, with the debt intended to be secured.

The store intended to be conducted with the money borrowed was the property of the husband; but supplies for the family and farm were procured therefrom. The parties having failed to pay the amount borrowed, the defendant, according to the terms of his mortgage, has advertised for sale the lands mentioned and threatens to sell the same. The plaintiffs, who are the husband and wife and trustee before mentioned, seek to enjoin said sale and to have the said mortgage cancelled.

The case being before the judge of the superior court on motion for an injunction, after notice to defendant, he granted the same until the final hearing of the cause, and the defendant appealed.

*Messrs. P. H. Winston, Sr., Pruden & Shaw,* and *Hinsdale & Devereux,* for plaintiffs.

*Messrs. W. A. Moore,* and *Coke & Martin,* for defendant.

Was the consent of the trustee necessary to the validity of the conveyance from John H. and Ella Hardy?

1. The rules on this subject in England and America are different, and the courts of the states differ from each other. In North Carolina the rule formerly was that the consent of the trustee was necessary when personal property was conveyed for the sole and separate use of a feme covert, but no power to charge or dispose of it was given to the feme in the deed of settlement; but since the adoption of the constitution and enactment of the marriage act of 1871, the consent of the husband, in lieu of that of the trustee, is sufficient. But this rule has never been applied to similar conveyances of real estate. When that is the subject-matter

of the conveyance, the assent of the trustee is not necessary unless required by the donor of the power as a condition precedent to a valid charge, or sale, by the feme.   Bell on Property, (Law Library, vol. 70, 494) ; 4 Ired. Eq., 312.   In England the rule is, that the general engagements of the wife shall operate upon her personal property, and her trustee shall be obliged to apply personal estate to the satisfaction of her general engagements.   White & Tudor's L. C., 399; *Huline* v. *Tenant ;* Brown's C. C., 16.

The counsel then discussed the North Carolina cases which are cited in the opinion of this court, and insisted that the consent of the trustee in a conveyance of real estate was not necessary,—commenting also upon *State* v. *Ragland*, 75 N. C., 12 ; *Pippen* v. *Wesson*, 74 N. C., 437 ; *Etheridge* v. *Vernoy*, 71 N. C., 184 ; *Withers* v. *Sparrow*, 66 N. C., 129.

2. As to the doctrine of the defective execution of powers : Whenever the formalities required by the power are not strictly complied with, the appointment will at law be void ; but in equity the rule is this :   Whenever a man having power over an estate, in discharge of moral or natural obligations, *shows an intention* to execute such power, the court will operate upon the conscience of the *trustee* to make him perfect this intention.   *Tollett* v. *Tollett*, 1 White & Tudor, 182, 191 and 192 and top of page 296, 3 Am. Ed. 1859 ; 3 Ohio, 527 ; 2 Ball & Beatty, 44.   Lord St. Leonard says : " It is only necessary that the intention to execute the power should appear clearly in writing ; whether the donee of the power only covenant to execute it, or by his will direct the remainderman to create the estate, or merely enter into a contract *not* under seal to execute his power, or by letters promise to grant an estate, which he can only do by an exercise of his power, equity will supply the defect. 2 Sugden on Powers, ch. X., sec. 2, paragraph 5, *et seq*, and 2 Ball & Beatty, 44.   See also *Stead* v. *Nelson*, 2 Beavan (17 E. C. L.) 245.

3. As to distinction between powers and trusts: The former are never imperative, the latter always are, and are obligatory upon the conscience of the party entrusted. C. J. Wilmot, R., p. 23. Joseph Hardy has a mere naked trust. Ella E. has all the power. Suppose the consent of the trustee of real estate is generally required for its aliena-tion by the feme covert, as in case of personal property, why require it here* when by the deed itself all discretion is taken from him. She may dismiss him without giving any reason, and substitute another who would execute her com-mands. It is vain to require his consent. Power of ap-pointment reserved by the feme (before passage of Revised Code) would have been extinguished or at least suspended until payment of Holly's debt. *Woodbourne* v. *Gorrell,* 66 N. C., 82. Now, its effect is as provided in Bat. Rev. ch. 35, § 1, which act has been considered in *Hogan* v. *Strayhorn,* 65 N. C., 279. It has the effect of a feoffment as held-in *Riggan* v. *Green,* 80 N. C., 238. She is disabled on ground of fraud from interfering with Holly's right to secure his debt under the mortgage. No one can avoid his own deed by which an estate has passed on the ground of his own fraud in exe-cuting it. 2 Smith L. C., 457.

RUFFIN, J. The single question presented for considera-tion in this case is as to the validity of the mortgage given by Mr. and Mrs. Hardy to the defendant, Holly, embracing a portion of the wife's separate estate, and executed as it was, without the knowledge or consent of her trustee, and *outside* of the powers conferred upon her in the deed of mar-riage settlement.

By the terms of that deed her power of disposition over the property conveyed was limited to be exercised, either by an order for its conversion under sale and directed to her trustee, or by a regularly executed will; and in case of her failure to dispose of it in one of these specified modes,

the property at her death was to devolve upon those who would then be her heirs at law or next of kin.

Under the rule of the English chancery courts a married woman in respect to any separate property she may have, is considered as a feme sole, with power to convey and do every other act touching it, except as she may be restrained by some positive provision of the deed of settlement; and even if that instrument should prescribe some particular mode of disposition, she may resort to any other unprohibited mode, by reason of her general power and dominion over its subject.

In the courts of equity of a majority of the American states, an exactly opposite rule has prevailed; and a married woman, entitled to a separate estate, is regarded as a feme . covert, and subject to every disability of the common law, except as she may have power conferred upon her under the deed of settlement in express and positive terms. When the point was first presented in this state, as it was in the case of *Frazier* v. *Brownlow*, 3 . Ired. Eq., 237, this court followed the lead of the English chancellors and gave the fullest indulgence to the powers of the wife, and so again it was done in *Harris* v. *Harris*, 7 Ired. Eq., 111, though in this latter case, there was a division of opinion amongst the judges which caused the question to be much discussed. It can do no good, at this day, to revive that discussion, nor is it necessary. For when the question next arose in the case *Knox* v. *Jordan*, 5 Jones Eq., 175, the court, as then constituted, without division and without any sort of reservation repudiated the doctrine of the English courts and adopted that which prevailed in most of the courts of the states, and whether this was wisely done or not, that case has been too often approved and doubtless too often acted upon in matters intimately connected with the interests and comfort of families, to admit of its correctness be-

ing now called in question. We *must* take it to be the settled law of this state, at least, that a married woman, as to her separate property, is to be deemed a feme sole only to the extent of the power expressly given her in the deed of settlement. Her power of disposition is not absolute, but limited to the mode and manner pointed to in that instrument; and when that is silent, she is powerless.

The counsel for the defendant admit this to be so in the case of settlements of personal property; but insist that this rule of construction should not be permitted to embrace similar conveyances of real estate. Their argument proceeding upon the difference in the two kinds of property, is that the wife is indebted for her right to exert *any sort* of authority over her personalty, to the interposition of a court of equity; for, without that, all her property of that character would, immediately upon her marriage, vest absolutely and to the entire annihilation of all her interest or power in the husband—and that having thus *created* this new interest in her, the court assumes the right to regulate and mould it, as may best subserve the policy of the law and the interests of the parties. But as to her realty: They say the court has conferred no new estate or power on her; and none was needed to protect it from the dominion of the husband; for, by law, it remained hers after marriage, descended to her heirs, and could be parted with or not, only as she might consent; and since the court has given her no new right, it should not undertake to restrain that which by law she should enjoy.

We cannot adopt the view suggested by counsel. For we do not discover that the *jus mariti* to the wife's personalty had any thing to do with the construction put by the courts upon her powers, and most especially with the more modern rule which was not thought of until long after that right of the husband had been effectually destroyed by the introduction of trustees into deeds of settlement. This new principle

of construction has resulted from a disposition on the part of the courts to pay greater respect to the intention of the parties to the instrument, and from experience which taught that such intention was in constant danger of disappointment, so long as the wife was left exposed to the solicitations of the husband or allowed to indulge her own generous impulses. It was seen that such settlements, though entered upon at the instance of prudent and anxious friends, with a view to shield the wife and her children as far as possible from the consequences of the husband's misfortunes, or of his vicious or indolent habits of life, too often failed of their purposes through his practices or her delusions; and it was to remedy this evil that the courts restricted her powers over the property conveyed. This being so, it would seem that instead of relaxing its rule in the case of settlement of real estate to the separate use of the wife, the court, on account of the higher dignity of such estate and its infinitely greater consequence to the parties, should use extreme diligence and care to guard against such a misappropriation as would defeat the intention of the maker of the instrument. We cannot therefore admit any such distinction between the two species of property, *upon principle.* It is true that in all the cases occurring in the courts of this state, in which the question as to the powers of the wife has been discussed, personal property has been the subject of settlement and of litigation, but such has not been the case in other tribunals. In the case of *Williamson* v. *Beckham*, 8 Leigh, 20, the court of appeals of Virginia made an express application of the rule, acknowledged to be good here as to personalty, to real estate settled on the wife, Judge TUCKER, the president of that court, declaring, " that a feme covert holding separate property in real estate by deed of settlement which empowers her to dispose of it in a designated mode, cannot make a disposition in any other, though other modes are not expressly negatived in the deed." And so too, both kinds of property

were involved in the noted case of the *Methodist Church* v. *Jacques*, 3 Johnson's Chan. Rep., 78, in which the learned chancellor, KENT, without observing any distinction between the two, held the *true rule* to be, that a married woman, with respect to her separate estate, should be considered as a feme sole to the extent only of the power given her by her marriage settlement, and *must* exercise that power in the way prescribed in that instrument. Very true it is, he was subsequently overruled in this by the highest court of errors in the state of New York; but it was done because that court, being one of the very few that did so, adhered to the doctrine of the English courts, which doctrine this court has expressly repudiated and declared to be against reason and unsuited to the habits and customs of our people. Controlled by these authorities, and seeing that the danger to the wife's separate estate attending the exercise on her part of an unrestrained power of disposition, is as great in the case of real estate as of personalty, (of which we could have no fitter illustration than the very case now under consideration) we do not feel at liberty to remove any of the disabilities which the law, as administered in this country, has imposed upon her, not capriciously, but from the highest consideration for her best interest and the interest of those who are to come after her.

Nor can we admit, as is further suggested by counsel, that it is a case for the application of the "Doctrine of the Defective Execution of Powers." Since the power of the wife is altogether a *delegated* one, to be exerted according to the strict intention of the maker of the settlement, or not at all, there is no room in this case for the operation of any such doctrine.

In arranging such settlements, one great end most commonly aimed at is the employment of a prudent trustee, whose coöperation if not his actual assent shall be needed in any proposed disposition of the property settled, thereby at

all times, securing for the wife, if nothing more, the benefit of his counsel and advice. This furnishes another reason why the courts so scrupulously adhere to the terms of the instrument, and will not permit the property to be parted with or encumbered, without such coöperation, if required according to its terms. In any view therefore which we are able to take of this case, the mortgage given by Mr. and Mrs. Hardy to the defendant cannot be held to be good, and the injunction restraining the sale thereunder was properly granted in the court below.

No error.                                    Affirmed.