HENRY KIRBY v. ALEXANDER BOYETTE, et al.

*Stare Decisis—Rule of Property—Feme Covert—Separate Estate of Married Woman—Trust for Married Woman—Power of Disposition.*

1. Where a rule of property established by this Court more than thirty years ago is sought to be changed, this Court will not disturb it whatever might be the present view of the Court upon the subject if it were presented as *res nova.*

2. Where a married woman acquires the title to land before or after marriage, without any qualification or restriction upon her right of alienation, she can dispose of it during her lifetime only in the way pointed out in the Constitution, (Art. X., Sec. 6.)

3. The Constitution imposes no limitation upon the right of a grantor or devisor to restrict or enlarge, by the terms of the instrument through which title passes, her *jus disponendi.*

4. The words "for the sole and separate use," or equivalent language, qualifying the estate of a trustee for a married woman, must be construed as manifesting the intent on the part of the grantor to limit her right of alienation to the mode and manner expressly provided in the instrument by which the estate is created.

PETITION TO REHEAR case reported in 116 N. C. R., p. 165. The petition was as follows:

"Nathan Boyette and his wife Louisa, on the 8th December, 1880, executed to Rountree, Barnes & Co., the mortgage set forth in the printed record, which is hereto annexed as a part of this petition. The question is, whether the said mortgage was valid so as to convey the equitable title to the land mentioned therein, the said land having been conveyed to Henry Kirby in May, 1887, in trust for the sole and separate use of said Louisa. The mortgage was duly executed by both husband and wife, the latter being privily examined, as provided by law, but

KIRBY v. BOYETTE.

the trustee did not join therein. The transaction being between these parties and Rountree, Barnes & Co., (the mortgage having been executed to secure a note due the latter,) it is not pretended that any fiduciary relation existed between them, nor is it pretended that any fraud or imposition was practised by them in the said transaction. Several years after the execution of the said mortgage, the plaintiff, Henry Kirby, the trustee above mentioned, took up the said incumbrance, and after holding it for some years, brought this action to enforce the payment of the said indebtedness. The transaction not being between the said trustee and the *cestui que trust*, it is not pretended that there is any presumption of fraud, nor is there any suggestion that the plaintiff did not deal honestly and fairly in taking up and holding, for the relief of his said *cestui que trust*, a *bona fide* incumbrance upon the said land. A trustee, under such circumstances, has always occupied a high standing in a Court of Equity, and relief will be cheerfully extended him, unless the instrument under which he claims reimbursement is utterly void. Such being the facts, it is manifest that the only question presented is, whether the said Boyette and wife could convey the equitable estate of the latter in the said land without the joinder of the trustee. There is nothing peculiar in the phraseology of the limitation which takes it out of the ordinary case of a conveyance to the sole and separate use of the wife, the language being substantially similar to the various illustrations in the text-books as to limitations of that character. There is no restriction imposed as to the disposition of the said estate, nor is there any method prescribed as to how such disposition may be made. The question, therefore, squarely presented to the Court is, whether a wife, with the joinder of her husband, may convey by deed and privy examination her equitable estate in

land held by a trustee, without the joinder of such trustee, when the deed contains no restriction whatever upon her power of disposition, and fails to prescribe any particular manner in which such disposition may be made. That that is the point upon which the decision in this case turned, is manifest from the opinion of the Court."

The Court sustained the negative view of the above proposition, and your petitioner submits that there was error in said judgment, and respectfully presents the following grounds in support of his contention :

" 1. The Court seems to have misapprehended the facts in the case of *Norris* v. *Luther*, 101 N. C., and this is manifest from the f llowing language of the opinion : " It must be conceded that the head-note in *Norris* v. *Luther* is misleading, but a critical examination of the case will disclo-e the fact that a decree of sale was vacated, a sale set aside and a deed cancelled, because a decree had been rendered without proper service on a *feme covert*, and that ultimately some doubt was expressed by the Court as to the title that would pass by the sale under the latter devise." The limitations of the trust in *Norris'* case were subs antially the same as in the present case, and the mortgage was executed by the *feme covert* and her husband without the joinder of the trustee. It is true, that a former decree and sale was set aside, because there had been no service on the *feme* defendant, but the Court, in the opinion in the present case overlooked the fact that in *Norris* v. *Luther*, the *feme* defendant being then in Court, a decree was made affirming the validity of the said mortgage and directing a sale of the land. The *feme* defendant appealed from this decree, on the ground that the deed was void because of the non-joinder of the trustee. Thus it appears that this *was the precise question presented to the Court*, and it was distinctly held, as stated in the head-note, that such a con-

veyance was valid and passed the equitable interest of the *feme covert* in the land. The doubt suggested was not as to the efficacy of the deed to pass all the interest of the *feme covert*, but simply whether her children had any interest under the limitation of the deed, the Court deeming it unnecessary to decide that question, it being sufficient for the purpose of the decision that said deed passed whatever interest the *feme covert* had in the land. An examination of that case, it is respectfully submitted, will show that the very point involved in the present case was distinctly passed upon by this Court, and that the said decision is direct and unqualified authority in favor of the petitioner.

" 2. Your petitioner submits that there was error in holding that the decision in *Norris* v. *Luther* was " in conflict with the older, as well as the latter cases " cited in the opinion, in that the Court overlooked the fact that in all of the cases the present question was not presented, and the Court only held that where the deed of trust thus prescribed a particular mode of disposition, such mode alone could be pursued. This is apparent from an examination of *Hardy* v. *Holly*, 84 N. C., 669; *Mayo* v. *Farrar*, 112 N. C., 68; *Monroe* v. *Trenholm*, 112 N. C., 634; and *Broughton* v. *Lane*, 113 N. C., 161."

It is true that in *Hardy* v. *Holly* the opinion states, " that a married woman, as to her separate property, is to be deemed a *feme sole* only to the extent of the power expressly given her in the deed of settlement. Her power of disposition is not absolute, but limited to the mode and manner pointed to in that instrument, and when that is silent, she is powerless."

In the case above-named, " a mode and manner " of disposition was " pointed to " in the instrument, and as the *feme covert* did not pursue this mode and manner, the deed was held to be void. All that was said in the opinion,

KIRBY v. BOYETTE.

beyond the point of the decision, was a *dictum*, and was so regarded by the Court when it was urged as authority in *Norris* v. *Luther*. In the last-named case, this *dictum* was distinctly repudiated. The Court said " the argument to sustain this (the contention that the joinder of the trustee was necessary) rests essentially, as we understand it, on the ruling in *Hardy* v. *Holly*. That decision does not support the present contention." After stating the terms of the deed in said case, the Court proceeds: " The Court held, as the deed provided the mode in which the *feme*, while *covert*, might exercise control over the fund and direct its disposition, the power must be exercised in the manner pointed out in the deed, and a conveyance under the statute would be and was unauthorized and ineffectual. The subject was thoroughly discussed by our late able associate, Mr. Justice RUFFIN, and the principle so announced. The marriage contract, and the deed made to carry it into effect in the present case, *contain no directions as to the exercise by the feme covert of her power of disposition of the trust property*." The Court therefore held that the conveyance, without the joinder of the trustee, was sufficient to pass the equitable estate, it having been " executed and acknowledged with privy examination as required by *The Code*, Sec. 1246." The Court further held, that as the trustee was a party to the action, (as in the present case,) the legal title would also be decreed to be in the purchaser. This decision has never been overruled, and it is submitted that it has become a rule of property by which the profession has been guided and under which interests have vested. To disturb it now would not only be against the policy of the law, as indicated by the trend of judicial decision, but would, your petitioner believes, be attended with great loss to many persons who have acted upon it,

confidently relying upon the stability of judicial decisions in relation to conveyances of property.

Your petitioner further submits, that in unnecessarily repeating, in the cases of *Mayo* v. *Farrar*, *Monroe* v. *Trenholm*, and *Broughton* v. *Lane*, the said *dictum* from *Hardy* v. *Holly*, the Court was probably inadvertent to the fact that it had been reviewed and distinctly repudiated in *Norris* v. *Luther*, as the latter decision is not mentioned in any of the said cases.

Your petitioner therefore respectfully submits that the case of *Norris* v. *Luther* is not in conflict with any later decision of this Court. Your petitioner further respectfully submits, that said decision was not in conflict with previous decisions; and your petitioner insists that, so far from this being the case, with the exception of the dictum above mentioned, all of the cases intimate that the doctrine of *Norris* v. *Luther* is correct.

In this connection, your petitioner respectfully suggests that the Court overlooked the able and elaborate opinion of RUFFIN, C. J., in *Newlin* v. *Freeman*, 4 Ire. Eq., the reasoning of which fully sustains the following head-note: " Where land is conveyed to a married woman, or to a trustee, for her separate use, she has no ability to dispose of that land by will, *nor otherwise than by the ordinary mode prescribed for the conveyance of land by feme coverts*, unless a power to that effect has been expressly given to her in the deed of conveyance." The opinion contains the following language: " Mr. Roper lays it down that, without expressing more, it (the deed) will not enable her to dispose of the real estate during the marriage otherwise than by fine and recovery, or with us, by the deed of husband and wife according to the statute; because, no power having been given her by the instrument to make any dis-

KIRBY. *v.* BOYETTE.

position of the property, *she can only do so by the mode prescribed by the general law,* and if she omits that her heirs must take."

The irresistible inference to be drawn from this language is that, where no restrictions are imposed, the wife may dispose of the equitable estate by fine and recovery, or their substitute, a deed executed by her and her husband with privy examination.

Your petitioner further submits, that the quotation in the opinion from *Clayton* v. *Rose,* 87 N. C., 110, (being the *dictum* in *Hardy* v. *Holly,* above-mentioned,) seems to indicate that the Court overlooked the fact in that case that the deed, though signed by the wife and husband, was without the privy examination of the wife. In support of the deed, it was urged that the English doctrine prevailed —that is, that *quoad* the separate estate the wife was a *feme sole,* and that, in the absence of any restriction, she could dispose of it as if she were single and without reference to the general provisions of the law prescribing the manner in which conveyances may be made by married women. Applied to the facts, then, before the Court, the language used was in accord with the doctrine prevailing in this and many other American States. It has no application, however, to cases like the present, where there were no restrictions, and where the general provisions of the law as to conveyances by married women were fully complied with. Your petitioner respectfully submits, that the Court overlooked the other part of the opinion in said case, which fully sustains the doctrine of *Norris* v. *Luther,* as foreshadowed by *Newlin* v. *Freeman.* This part of the opinion sustains the head-note in the case, which is as follows: "Equitable as well as legal estates in land vested in a married woman can be transferred *only upon her privy examination in conformity to the statute,* unless the

power is given her in the instrument creating the trust.'"
The Court quotes from *Newlin* v. *Freeman*, and the opinion
strongly supports the ruling in *Norris* v. *Luther*. It says,
in effect, that where there are no restrictions, she may con-
vey as provided in Rev. Code, chapter 37–'8, which pro-
vision is brought forward in the present *Code.*

Your petitioner further submits that the case of *Clayton*
v. *Rose* affords a proper illustration of the meaning of
the *dictum* of *Hardy* v. *Holly*, in that it denies that *quoad*
the separate estate a married woman, even where there
are no restrictions, can convey as if she were a *feme sole*,
regardless of the husband and the general law as to privy
examination. This view is fully sustained by a brief ref-
erence to the English doctrine. In England, where there
were no restrictions in the deed of settlement, a wife was
regarded in respect to her personal estate as if she were a
single woman and could dispose of it in any way that a
single woman could dispose of property, and without
reference to the assent or the joinder of the husband or
privy examination. This principle seems to have been
extended to life-estates, and afterwards to fees in land.
3 Pom. Eq. Juris., Ed. 1887, Section 1104; 1st Bishop
Married Women, 163.

In the note to the above section in Pomeroy's Equity,
it will be seen that, in the absence of restrictions, it was
not doubted that she had such power of disposition in fee
by fine and recovery, or by deed with privy examination
and the husband's consent. The doubt, it is said, was
whether she could convey as if she were single—that is,
without the joinder of the husband and privy examination.
It appears from the note that it was held that she could so
convey as a single woman, and it was in denial of this
absolute freedom from the disability of coverture in con-
veying her equitable separate estates, and not her right to

convey by fine and recovery, or its substitute, that the early American cases used the language of the *dictum* of *Hardy* v. *Holly*. It will also be observed that on the authorities of *Newlin* v. *Freeman*, the author of the note places this State in the class in which the English doctrine, to a partial extent, prevails, and which is entirely consistent with *Norris* v. *Luther*, although in another place this State is placed in another class upon the authority of the *dictum* in *Hardy* v. *Holly*.

In view of these considerations, your petitioner is advised that, if any importance is to be attached to the *dictum* under discussion, the latter part of it should be read as follows: "And when that (the deed) is silent, (as to the manner of disposition,) she is powerless to convey as if she were *feme sole*, because of her common-law disability, but she may convey to the extent of the removal of such disability, as by fine and recovery or by deed with the joinder of the husband and privy examination." In other words, even where there are no restrictions in the deed of trust, she cannot, as in England, convey as if she were a single woman. She is, in this State, still under the disabilities of coverture, except where they have been partially removed. These disabilities are removed to the extent that she can, in the absence of restrictions, convey her legal and equitable estates by deed and privy examination, and where she can do this, the Court, in limitations of this character, will decree a conveyance by the trustee, if the legal title is desired.

Your petitioner is also advised that the creation of these equitable estates by a conveyance to the trustee was not for the sole purpose of protecting the wife from the improvidence or coercion of the husband, but to prevent the operation of the law by which her personal property and the rents and profits of her land vested in her hus-

band. 1 McCord Married Women, 411. She held the property as ordinarily equitable estates are held, the statute not executing the use, for the reasons above stated. Holding them in this way, she could, in the absence of restrictions, convey them as in the case of ordinary equitable estates, her power to do so and the manner of its exercise being limited in this and some other States to the general provisions of the law authorizing the conveyance by her of all her "estate, right and title" in her real property. *Clayton* v. *Rose*, page 109.

Whenever restrictions were deemed necessary to protect her from her or her husband's improvidence, or the husband's improper influence, the donor or settlor was careful to insert them in the instrument creating the trust.

Your petitioner further submits, that there was error in the opinion, in indicating that he relied upon the provisions of Art. X., of the present Constitution, as at all necessary in the support of his case. The right of the *feme covert* to convey by fine or by deed, with privy examination, existed long before the adoption of the said Constitution. Neither was it contended that the Constitution imposed any limit upon the power of a donor or settlor to provide reasonable restrictions in conveying his property. In the present case, there were no such restrictions, and the argument, even if tenable, was unnecessary in the presentation of petitioner's case.

Your petitioner states that the said provision of the Constitution was referred to for the purpose of showing the general policy of the law in reference to the removal of the disabilities of married women, and more particularly to illustrate the incongruity of reversing a well-considered opinion of this Court, by the adoption of a principle (upon the authority of a repudiated *dictum*) which renders a married woman incapable of devising her equitable estates,.

KIRBY *v.* BOYETTE.

(where there are no restrictions,) in the absence of an express power in the deed, while the Constitution has conferred this capacity upon her in general terms.

Your petitioner further suggests that the Court overlooked also the case of *Swann* v. *Myers,* 75 N. C., 585; 79 N. C., 102. In these cases PEARSON, C. J., says: ' That a married woman, owning an estate for life in a trust estate, has *jus disponendi,* is laid down in all books unless there be a restraint upon the power of alienation." In the 79th vol., *supra,* the Court said: " That this case has been here before. * * * * That the opinion of the Court held that it did convey the equitable life-estate of Francis Swann."

For the reasons above assigned your petitioner, availing himself of the rule of Court, respectfully prays that a rehearing be granted in this action.

AYCOCK & DANIELS,
SHEPHERD & BUSBEE,

*Attorneys for Petitioner.*

*Messrs. Shepherd & Busbee,* for petitioners.
*Messrs. H. G. Connor* and *Pou & Pou,* contra.

AVERY, J.: "An examination of the brief filed by counsel for the appellant in *Hardy* v. *Holly,* 84 N. C., 661, will show that the argument in that case fully covered the ground upon which we are asked to review the decision of this Court, (116 N. C., 165,) and with it to overrule a line of cases extending over fifteen years past. The exhaustive brief of the learned counsel who appeared in that case and the questions raised by the appeal invited and demanded, at that juncture, a review of the previous cases in which

the doctrine of the respective rights and powers of married women and trustees, holding for their sole and separate use, in selling and disposing of the separate property. The learned Justice (RUFFIN) who delivered the opinion started out in the discussion by stating the English doctrine that a married woman was regarded as a *feme sole* as to any estate conveyed to her separate use, except in so far as she was restrained by the positive prohibition in the the instrument creating the estate.

After a cursory review of the previous cases in our reports bearing upon the subject, the Court said in *Hardy* v. *Holly*, *supra*, "When the question next arose in *Knox* v. *Jordan*, 6 Jones Eq., 175, the Court as then constituted, without division and without any sort of reservation, repudiated the doctrine of the English courts and adopted that which prevails in most of the courts of the States, and whether this was wisely done or not, *that case has been too often approved*, and doubtless too often acted upon in matters intimately connected with the interest and comfort of famlies, to admit of its correctness being now called in question." The Court then proceeded to crystallize the law as they understood it to have been declared in *Knox* v. *Jordan.* It is insisted that this statement of the rule, established by previous decisions, was a *dictum*, as well as a departure from the doctrine theretofore laid down by our own and other courts of this country. It may aid us in disposing of this contention to reproduce the rule which it is insisted was a *dictum*, followed by the language used in *Knox* v. *Jordan*, cited as authority to sustain it. In *Hardy* v. *Holly*, the Court said, "We must take it to be the settled law of this State, at least, that a married woman as to her separate property is to be deemed a *feme sole* only to the extent of the power expressly given her in the deed of settlement. Her power

of disposition is not absolute but limited to the mode and manner pointed out in the instrument, and when that is silent she is powerless." The same principle was stated by MANLY, J., under the inspiration of a Court constituted differently, twenty-one years before, as follows: "We prefer adhering as closely as may be, consistently with decided cases, to the rule that a separate estate for the support of a married woman does not confer any faculties upon her except those which are found in the deed of settlement, and that in all other respects she is a *feme covert* and subject to the usual disabilities." It is difficult to distinguish between a rule that a married woman, as to property limited to her sole and separate use, is a *feme sole* except as to "faculties" or powers "found in the deed," and the proposition that her power of disposition is not absolute but limited to the mode and manner pointed to (instead of the powers found) in the instrument creating the trust, and "when that is silent she is powerless." If the rules are plainly expressive of the very same principle as the Court in *Hardy* v. *Holly* held that they were, the lapse of fifteen years since its reiteration would enhance the probability that it had been too often acted upon to be disturbed, if the subject had never been since discussed. But in *Kemp* v. *Kemp*, 85 N. C., Justice RUFFIN, again speaking for the Court, said: "A married woman is to be deemed a *feme sole* as to her separate estate, only to the extent of the power conferred upon her in the deed of settlement, and if no power of disposition be given in that instrument she is altogether without such power." In *Mayo* v. *Farrar*, 112 N. C., 66, the same rule was again substantially reiterated, and the Court cited 2 Pomeroy Equity Jurisprudence, Section 1105, where the author classifies this Court as one of those where the wife's power over the estate, conveyed to a trustee for her separate use,

is made to depend solely upon the permissive provisions of the instrument creating such estate. 2 Pomeroy, *supra*, note 1, p. 1651. Again, in *Monroe* v. *Trenholm* (at the same Term) 112 N. C., 634, the Court laid down the rule that where land was conveyed to a trustee for the sole and separate use of a married woman, she had " no power of disposition except such as is clearly given in the instrument." With the explanation that the restriction would not continue as a rule when the married woman should become discovert, the opinion in the case last mentioned was affirmed on the rehearing, 114 N. C., 590. The doctrine of *Hardy* v. *Holly* was also approved in *Broughton* v. *Lane*, 113 N. C., 16. There was therefore a line of decisions, sustaining the principle governing this case, which extended over 35 years, when it was first heard. If it were conceded that every opinion since *Knox* v. *Jordan, supra*, in so far as it incorporated this rule restricting the powers of married women, was a *dictum*, still that case would remain with its plain and forcible announcement of the solution of a vexed question which the Court had, upon careful consideration, promulgated as the law. Can this Court, consistently with its constitutional obligation to adhere to decisions which may have become a rule of property, alter or modify the principle upon which the people of the State have been invited to invest their money for so long a period? The proposition, upon which the contention of the petitioner to rehear is based, is unsound in law and cannot be acted upon without grave danger to the rights acquired under a well-founded confidence in the stability of judicial decisions. The theory is that if a Court in the elucidation of the questions involved in any given controversy finds it necessary to crystallize the law upon the subject into a clean-cut rule, which will prove a guide to

118—17

the profession, such rule may be abrogated after it has
been acted on for over 30 years, because the case in hand
might have been decided by stating the principle govern-
ing the particular case, instead of the broader one founded
upon the reason of the thing but decisive also of other
cases as well as that at bar. To lend our sanction to such
a view of the law would be to imperil the security of
many principles upon which titles have been acquired
under the advice of the most competent counsel. A due
regard for vested rights necessarily constrains a court to
reject such a theory as little short of revolutionary.

It is true that the Court of Appeals of New York is
among the appellate tribunals of this country, which
have adopted the English doctrine. Counsel called
attention to the fact that the case of *Methodist Church* v.
*Jacques*, 3 Johnson Ch. Rep., 78, in which Chancellor
KENT held that a married woman must, as to separate
property settled on her, be considered a *feme sole* only to
the extent of the power expressly given her in the mar-
riage settlement, was subsequently overruled by the higher
Court. That fact was noticed in *Hardy* v. *Holly, supra,*
and the Court expressed its approval of the doctrine as
announced by the learned Chancellor, and its dissent from
the views of the higher Court.

The suggestion that the constitutional provision (Art.
X., Sec. 6) was intended to abrogate the right to restrict
the wife's power of alienation by deed of settlement is not
a new question. The brief of appellant's counsel in
*Hardy* v. *Holly* shows the contention of the defendants
there to have been that the Constitution of 1868, Art. X.,
Sec. 6, substituted the husband in the place of the
trustee in all marriage settlements so far as to establish it as
the universal rule that the wife could with his assent make
a good title to realty regardless of the wishes of a trustee.

The contention was that the Constitution restricted her right of disposition in no way beyond the requirement that the assent of the husband should be given, and that any attempt to impose further limitations by deed upon her power of alienation was an invasion of her constitutional rights. The Court uttered no dictum in answering the contention as it did, when it announced its holding to be not only that the Constitution was not to be construed as a universal enabling act for the benefit of married women, but that in all cases where the legal estate was vested in a trustee to hold for the sole and separate use of a *feme covert*, the intent of the grantor would prevail, and such deeds would be construed as indicative of an intention to protect her against the solicitations of a possibly imprudent husband by placing her under common-law disabilities except in so far as the instrument emancipated her from them. *Knox* v. *Jordan, supra.* A principle, which a court finds it necessary to announce in order to meet the contentions of an appellant and to constitute the basis of one of the stages by which it reaches the opposite conclusion, is in no sense a *dictum.* The application of it to the case in hand does not destroy its weight as the bedrock upon which the adjudication rests. No matter what would be the view of this Court were the matter now before it *res nova*, it cannot disturb a rule of property announced fifteen years ago and declared to be but an affirmance of the principle laid down over twenty years before. Wills Res Adjudicata, Sections 598 to 603.

Some time after the enactment of the Statute of Uses, the courts of England held that it did not transfer the possession to the use, where the trustee was charged with a special duty, such as paying over the rents, which could not be performed if he were deprived of the legal estate. When the courts of England subsequently held that a mar-

ried woman, to whose sole and separate use an estate had been limited, was to be deemed a *feme sole* except in so far as her power to do so was restricted in the deed of settlement, it followed of course under such a theory that, in the absence of restrictions, the legal estate was transferred by the operation of the Statute. The English construction of such deeds was based upon the idea that if the grantor intended to restrict her powers, he would give expression to his purpose in the deed. The American courts, which have followed the lead of the English tribunals, have proceeded upon the same rule for ascertaining the intent. But in *Knox* v. *Jordan*, 5 Jones' Eq., at p. 176, the Court finally settled down upon and adopted exactly the opposite theory as the true exposition of the law. After *Harris* v. *Harris*, 7 Ired. Eq., 111, had been in effect overruled, the rule which was afterwards gathered from that opinion by the Judge who wrote *Hardy* v. *Holly* was upheld upon the ground that it was not willing " to depart further from the principles of the common law in relation to the disabilities of married women, and run into the labyrinth of difficulties which allows the doctrine whereby they are treated as *femes sole.*"

The difference in the two lines of authorities grows out of the fact that deeds of settlement are interpreted under different rules of construction. The theory upon which this Court has heretofore acted is, that grants, like statutes, will be construed strictly in determining whether they abrogate a common-law rule. The idea present in the mind of this Court was that while the right of the grantor to enlarge the powers of a *feme covert* was conceded, his intent to do so must be plainly expressed in order to prove operative in relieving a woman from her common-law disability. Chancellor KENT said in *Methodist Church* v. *Jacques, supra*, at p. 113 : " Her (the wife's) incapacity

is general, and the exception is to be taken strictly and to be shown in every case, because it is against the general policy and immemorial doctrine of the law. These very settlements are intended to protect her weakness against her husband's power, and her maintenance against his dissipation. It is a protection which this Court allows her to assume or her friends to give, and it ought not to be rendered illusory."

It is like putting new cloth upon old garments to attempt to fit the English doctrine, or any rule that grows out of it as a logical sequence, to the principle adopted here. If, as Chancellor KENT says *supra*, " the very settlements are intended to protect her weakness against her husband's power, and her maintenance against his dissipation," it must follow that the duty of shielding her from such evils devolves upon him *ipso facto* by the limitation of an estate to him as trustee for the sole and separate use of a *feme covert*. If the special duty and authority of protecting her by the exercise of the veto power upon attempted sales by her with the joinder of the husband are imposed upon him by the grantor, then it follows that the Statute of Uses does not transmit the legal estate and thereby disable the trustee to give the contemplated protection, and if it does not pass out of him by force of the statute, it can only pass by his joinder in a deed. It is not sufficient to cite authorities from the English and other courts where it is held that no special duty devolves upon the trustee outside of what is specifically mentioned in the deed of settlement, for under that theory of course the trustee is charged with no special trust, and the legal estate passes to the *feme covert*. The rule that where in a conveyance to uses the grantee is charged with a special duty in reference to the property, a trust is created, is universal, whatever may be the differences in its application. But

when we hold that a special trust is created by certain language, and the English courts or others in this country hold that it gives rise only to a naked trust, it must follow that, under one theory the legal estate is put into the trustee for the protection of the *cestui que trust*, while under the English doctrine it is transmitted by the statute.

"The same considerations (says Dr. Minor, 2 Inst., 187, 213) which before the statute induced the courts of equity to decline to interfere with the possession of the person seized—namely, because such possession was requisite for the purposes of the transaction, led to the construction that *special trusts* were not executed by the statute, but remained as before, equitable estates only."

Before the passage of 27 Hen. VIII., the *cestui que use* could as a general rule invoke the aid of the Ecclesiastical court to compel a recusant feoffee to uses to convey the legal estate to him or to any other person he might designate (2 Minor's Inst., 211 (185) but where the conveyance to the *cestui que trust* would disable the feoffee from performing or prevent the performance of a duty, which it was intended by the feoffor, as evidenced by the very terms of the declaration made cotemporaneously with the livery, should devolve upon the feoffee, the court of equity refused to aid in defeati g instead of carrying out the intention of the feoffor. Washburn in explaining the nature of indirect trusts arising from the failure of the statute to execute says : "Thus, for illustration, a grant or devise to A. in trust for B., or to permit B. to take rents and profits, would be an executed trust in B. unless B. *was a feme covert*, when in order to carry out the grantor's or devisor's intent it would be a trust or use not executed." 2 Wash. Real Prop., 488 (163). Acting upon the rule laid down in *Knox* v. *Jordan* that a *feme covert* was emancipated from her common-law disabilities only to the extent

that the deed of settlement expressly clothed her with
greater power, and upon the doctrine of Chancellor KENT,
approved in *Hardy* v. *Holly* that the conveyance to the
sole and separate use of a married woman *ex vi ter-
mini* implied a purpose on the part of the grantor
to protect her against the solicitations of a thrift-
less husband, this Court could not have reached
any other conclusion than that the transmission of
the possession to the wife, where it vested in the trustee
for a special purpose, would tend to defeat the express
object of the grantor, and that it would be divested only
by a conveyance in which he and the *cestui que trust*
should join.    The Statute of Uses substituted for 27 Hen.
VIII. (*Code*, Sec. 1330) provides that the possession of the
bargainee shall be transferred to the bargainee as perfectly
as if the bargainee "had been enfeoffed at common-law
with livery of seizin of the land intended to be conveyed,"
&c.    The case of *Wilder* v. *Ireland*, 8 Jones, 85, was one
in which the distinction, which was familiar to those who
enjoyed the privilege of his instruction, was sharply
drawn by Chief Justice PEARSON as to the operation of
this statute in transferring the legal estate, where the con-
veyance was for the use of a *feme covert*.    There, the Court
held that where a devise was to a trustee " to the use and
benefit of my daughter E." for life, the statute executed the
use by transferring the legal estate to her for life.    But in
the discussion the learned Chief Justice for the Court said :
" Where one person is seized to the use of another, the
statute carries the legal estate to the person having the
use.    But three classes of cases are made exceptions to its
operation, i. e., where a use is limited on a use, (2) where
a trustee is not seized but only possessed of a chattel inter-
est, and (3) where the purposes of the trust make it neces-
sary for the legal estate and the use to remain separate, as

in the case of land conveyed for the separate use and maintenance of a married woman. This is familiar learning. See Black. Com." If the statute executed the use, though the husband and wife were deemed to be jointly seized, the rights of the wife were so merged by the coverture that the husband alone was at common-law entitled to the rents and profits. 1 Wash., *supra*, star p. 276. The same author (star p. 278) adverts to the fact that in some of the States the English rules of Chancery are adopted, while " in others the wife is not permitted to go beyond the power expressly given by the deed of settlement." In a note, South Carolina, Mississippi, Tennessee, Virginia and Rhode Island are enumerated along with Pennsylvania as among the States adhering to the American rule, though he failed to mention the fact which Pomeroy notices that North Carolina belongs to the same class.

Upon the direct authorities cited from our own Reports as well as upon the fundamental principles as interpreted by this Court, we conclude:

1. That where a woman acquires the title to land before or after marriage without any qualification of or restriction upon her right of alienation, she can dispose of it during her lifetime only in the way pointed out in the Constitution (Art. X., Sec. 6).

2. That the Constitution imposes no limitation upon the right of a grantor or devisor to restrict or enlarge, by the terms of the instrument, through which title passes, her *jus disponendi*.

3. That the words " for the sole and separate use," or equivalent language qualifiying the estate of a trustee for a married woman, must be construed as manifesting the intent on the part of the grantor to limit her right of alienation to the mode and manner expressly provided in the

instrument by which the estate is created. In the former opinion the case of *Norris v. Luther* was referred to, and some obvious distinctions between the facts there and in other authorities cited were mentioned. But there was a broad intimation that in so far as the opinion in that case could be construed as antagonizing the doctrine of *Knox v. Jordan*, *Hardy v. Holly* and the later adjudications, it must be considered as modified. The petition is dismissed.

Dismissed.