PERKINS v. BRINKLEY.

(Filed October 15, 1903.)

TRUSTS—*Deeds of Trust—Husband and Wife—Dower—The Constitution, Art. X, sec. 6.*

> Where land is conveyed to a trustee, who is to pay the rents to a married woman, the wife of the grantor, the *cestui que trust* may compel the conveyance of the legal estate to herself at any time, and hence the trustee is not liable for rents and profits received by the husband of the *cestui que trust.*

ACTION by Mary E. Perkins against Abraham Brinkley, heard by Judge *Frederick Moore* and a jury at May Term, 1903, of the Superior Court of WARREN County. From a judgment for the plaintiff for less than the relief demanded the plaintiff appealed.

*Pittman & Kerr,* for the plaintiff.
*Tasker Polk, Thomas N. Hill* and *Day & Bell,* for the defendants.

CONNOR, J. This action was originally brought by the plaintiff against Abram Brinkley as trustee for plaintiff and in his capacity as executor of Dr. W. M. Perkins, deceased, and against the executrix of Dr. Perkins. At the term subsequent to the filing of the complaint plaintiff submitted to a non-suit as to the personal representatives of Dr. Perkins. The plaintiff alleged that on the 28th of January, 1893, Dr. W. M. Perkins, in contemplation of a marriage then about to be solemnized between plaintiff and himself, executed a certain instrument, in writing, conveying to the defendant a tract of land upon the following trusts: "That the above 500 acres of land is conveyed to Abram Brinkley in trust as annuity of rents for Miss Mary E. Cheek during her life-time,

and it is understood that she will not claim for herself, or through any other person, any right, title or interest in any property now owned or may hereafter be owned or become in possession of by said party of the first part, and she relinquishes all right of dower," etc. This deed was executed by the defendant, who was a party thereto. It appears that at the time of the said marriage Dr. Perkins was in possession of the land described in the deed, and remained in possession, receiving all the rents thereon during the whole of the coverture between plaintiff and himself, he having died January 2, 1901.

The verdict of the jury established the following facts: That the defendant Brinkley never took possession of the land described in the complaint, or received the rents and profits thereon, until after the death of Dr. Perkins, or otherwise performed the duties imposed upon him by the said deed; that the said Dr. W. M. Perkins received the rents and profits on the said land from the date of the marriage until his death without objection from the plaintiff, it being conceded that the defendant received the rents for the year 1901 and paid over to the plaintiff $102.50 thereof. The Court rendered judgment for the balance, to-wit, $97.50, to which judgment the plaintiff excepted and appealed.

In view of the non-suit taken by the plaintiff against the personal representatives of Dr. Perkins, the record presents but one question for determination: Was it the duty of the defendant to take into his possession the lands conveyed to him and rent them out, receiving the rents therefrom and paying them over to the plaintiff? The answer to this question depends upon the character of the trust imposed upon him by the deed.

Mr. Tiedeman, in his law of Real Property, section 494, says: "Where a special duty is to be performed by the trustee in respect to the estate, such as to collect the rents and profits,

to sell the estate, etc., the trust is called active. It is the duty which prevents the operation of the statute, for the trustee must have the legal estate in order to perform his duties. All other trusts are denominated passive trusts, because there is no duty imposed upon the trustee. He simply acts as the reservoir of the legal estate, because from the terms and character of the conveyance and limitation the statute cannot transfer the legal estate to the *cestui que use* or *trust.* Such would be a use upon a use—a use in chattel interests, and *uses to persons incapable of holding the legal estate—for example, married women.*"

The distinction between a simple and a special trust is thus pointed out in Lewin on Trusts, section 18: "The simple trust is where property is vested in one person upon trust for another, and the nature of the trust, not being prescribed by the settler, is left to the construction of the law. In this case the *cestui que trust* has *jus habendi,* or the right to be put in actual possession of the property, and *jus disponendi,* or the right to call upon the trustee to execute conveyances of the legal estate as the *cestui que trust* directs. The special trust is where the machinery of a trustee is introduced for the execution of some purpose particularly pointed out, and the trustee is not, as before, a mere passive depositary of the estate, but is called upon to exert himself actively in the execution of the settler's intention, as where a conveyance is to trustees upon trust to sell for payment of debts." Among the last class he says: "And if the trust be simply to permit A to receive the rents, the legal estate is executed in A, this being a mere passive trust."

This Court, in *McKenzie v. Sumner,* 114 N. C., 425, speaking by *Shepherd, C. J.,* says: "As to the real estate devised to the defendant for the benefit of the plaintiff, there is no reason why the legal title is not vested in the plaintiff by the statute of uses, as the land is not conveyed to 'her sole and

separate use,' nor is the trustee charged in any manner whatever with any special duties in respect to the same.   \*   \*   \*
The plaintiff being the absolute equitable owner, there are no ulterior limitations to be protected, and under the terms of the will the trustee has nothing but a bare, naked legal estate, unaccompanied, as we have remarked, with a single special duty.  As the plaintiff's separate estate is fully protected against the interference of her husband by the provisions of the Constitution, and as the trustee has no power to withhold from her either the property or its income, we are unable to see why the legal title should remain in him, unless it be to enable him to charge the five per cent. commissions which he claims."  The trust declared in the deed before us is indefinite.  We construe it, however, to mean that the *cestui que trust* is to be permitted to collect and use the rents as her separate estate.  The words used are, we think, capable of no other construction.  There is no suggestion in the deed that the defendant is required to receive the rents and pay them to her.  This construction of the deed, in the light of the authorities cited, would dispose of the appeal but for the fact that the deed was executed in contemplation of the marriage of the *cestui que trust* and that such marriage followed immediately after its execution.  Prior to the adoption of the Constitution of 1868 the conveyance of land to a trustee for the benefit of a married woman created an active trust, for that the courts inferred it to be the·intention of the maker of the deed to secure to her through the medium of a trustee a separate estate, and it fell under that class of uses which were not executed by the statute, as if "an estate be given to trustees upon a trust for a married woman for her sole and separate use, and her receipts alone to be sufficient discharge; or if a trust deed to permit and suffer a *feme covert* to receive the rents to her separate use, the legal estate will vest in the trustees and the statute will not execute it in

the *cestui que trust.* In all these cases the Court will give this construction to the gift, if possible, for if the statute should execute the estate in the married woman, certain rights would arise to the husband which might defeat the intention of the donor." As by the Constitution of 1868, Art. X, sec. 6, "The real and personal property of any female in this State acquired before marriage, and all property, real and personal, to which she may after marriage become in any manner entitled, shall be and remain the sole and separate estate and property of such female, and shall not be liable for any debts, obligations or engagements of her husband," etc., the wife is secured in the enjoyment of her real and personal estate and all rents, profits and incomes accruing therefrom. It would seem that the reason which existed for construing a declaration of trust for a married woman created prior to the adoption of our Constitution, as an active trust, has ceased. Such seems to have been the view of this Court, as expressed in *McKenzie v. Sumner, supra.* The Supreme Court of Georgia, in *Sutton v. Aiken,* 62 Ga., 733, speaking by *Bleckley, J.,* construing the language of their Code, which is in many respects similar to our constitutional provision, says: "Prior to 1866 (The Code, sec. 1754) such a trust would perhaps have been executory and would have continued on foot so long as the coverture existed, but that act, as has been several times decided, introduced a new rule of property in respect to married women and a corresponding enlargement of their legal capacity. With reference to her separate estate, a female, married or single, is now on full equality with a male, except in a few particulars defined by statute. Save in those particulars, when her equitable rights are commensurate with those of the male, her legal rights are also commensurate with his, and the difference of sex is utterly immaterial. Whenever the subtle action of law-chemistry—perhaps I should rather say law-magic, for it resembles magic more than

natural science—transmutes his equitable rights into legal rights, the like transmutation, the conditions being the same, will be effected upon hers. A consequence of this exact parallelism between the sexes is that a conveyance made since the Act of 1866 in trust for a woman, married or single, of full age and sound mind, with no remainder to protect and nothing prescribed for the trustee to do, operates to pass the legal title immediately into the beneficiary. The trust is executed in the moment of its creation." In *Manning v. Manning,* 79 N. C., 293; 28 Am. Rep., 324, this Court held that "the wife by law is entitled to the exclusive possession of her property as much so as if she were a *feme sole* or a man, and therefore must necessarily have the same remedies for acquiring the exclusive possession and enjoyment of her property, and that the use of such remedies only affects the property and not the social relations between husband and wife established by the contract of marriage." Again, says *Bynum, J.:* "It may be, and perhaps must be, conceded that as to the property of the wife, real and personal, and the rents, issues and profits of it, she is independent of her husband to the extent that she may reduce it into possession, and for that purpose she can, in her own name, resort to any proper action. * * * The plaintiff is entitled to be let into the possession of her lands, and, in a legal sense, the sole and exclusive possession." In *Walker v. Long,* 109 N. C., 510, *Merrimon, C. J.,* citing the constitutional provision, says: "This provision is very broad, comprehensive and thorough in its terms, meaning and purpose, and plainly gives and secures to the wife the complete ownership and control of her property as if she were unmarried, except in the single respect of conveying it. She must convey the same with the assent of her husband. It clearly excludes the ownership of the husband as such, and sweeps away the common-law right or estate he might at one time have had as tenant by the curtesy initiate. The strong, exclu-

sive language of the clause recited above is that the property
'shall be and remain the sole and separate estate and property
of such female,' the wife." All of our legislation and judicial
construction of the Constitution and statutes have been in the
same direction. Hence it would seem that the reason which
formerly controlled the courts in holding that a trust, when
no duty was imposed, for the benefit of a married woman
was active rather than passive, no longer exists in North
Carolina. It is true that in *Hardy v. Holly,* 84 N. C., 661,
this Court, by *Ruffin, J.,* held that she, together with her hus-
band, could not convey her equitable estate without joining
her trustee, and that case was affirmed in *Kirby v. Boyette,*
118 N. C., 244. It will be observed, in *Hardy v. Holly,*
*supra,* that the trust was clearly an active one, duties being
expressly imposed upon the trustee. In *Kirby v. Boyette*
there were no such duties imposed. We are not called upon
by this appeal to pass upon the questions involved in those
cases. Whether the statute executed the use in the case before
us, vesting in Miss Cheek, afterwards Mrs. Perkins, the legal
title to the land, it is not necessary for us to decide.

We do not think it improper to say that in the conflict
between *McKenzie v. Sumner* and other cases referred to in
the very learned brief of the plaintiff's counsel in *Kirby v.*
*Boyette,* and the doctrine as laid down in *Hardy v. Holly* and
*Kirby v. Boyette,* we are of the opinion that the principle
announced in *McKenzie v. Sumner* is more in consonance
with the reason of the thing and the status of the wife in
respect to her property under the provisions of our present
Constitution.

It is difficult to see how the mere declaration of trust in
favor of a married woman, there being no duties imposed
upon the trustee or any ulterior limitation of the estate to be
preserved, should prevent the operation of the statute. She
now has full control over her property and its income, rents

and profits as if she were a *feme sole.* They are not liable
for the debts of her husband and in no way subject to his
disposition or control. Such deeds are thus taken out of the
class mentioned by Mr. Tiedeman as uses "to persons incapa-
ble of holding the legal estate." However this question may
ultimately be settled, we are clearly of the opinion that the
trustee had no power to prevent Mrs. Perkins from assuming
control of the land conveyed to him for her benefit, or to pre-
vent her receiving the rents and profits therefrom, and that
therefore no duty was imposed upon him to take control of
the lands, rent them out and receive the rents and profits.
Certainly this was the construction put upon the deed by the
parties thereto, and it would be a harsh and unjust rule to
now impose upon the trustee a liability for rents and profits
of land of which he had no control and of which the husband
of the plaintiff was, at the time of the execution of the deed,
in possession, and remained in possession during the coverture,
receiving the rents and profits. Whether the husband was the
agent of the wife, as held in *Faircloth v. Borden,* 130 N. C.,
263, we do not think it necessary to decide, as the non-suit
removed this question from the record in this case.

We have carefully examined the authorities cited by the
learned counsel for the plaintiff. In *Hicks v. Bullock,* 96
N. C., 164, the trustee is expressly directed to rent out the
land and pay over the money arising therefrom to the *cestui
que trust.* In *Allbright v. Allbright,* 91 N. C., 220, the con-
troversy was as to which of the several persons for whose
benefit the land was held was entitled to the rents and profits,
the Court saying: "The donor manifestly intended to make
some provision for his wife and all the children of his son
James, and to have his son manage and control the property
for, and only for, that purpose. He expected and required
him to take care of, use and improve it in a way and manner
most expedient and faithfully to that end while he should

133——11

live, and, having accepted the trust, he became obliged to do so." The deed in this case created an active trust. In *Barnes v. Barnes*, 104 N. C., 613, the trustee was directed "to hold the said lands and to allow the said Samuel W. Barnes and Margaret A. Barnes to have the rents and profits thereof for their own use and behoof, and further, that out of the said rents and profits to support the said Margaret Barnes in such a manner as she has heretofore lived." The only question presented was the manner in which the trustee should dispose of the rents and profits, so that out of the said rents and profits the said Margaret Barnes could be supported.

We concur with his Honor in the opinion that the defendant was not liable for the rents collected by the husband of the plaintiff.

The judgment upon this, the plaintiff's, appeal must be Affirmed.

MONTGOMERY, J., did not sit on the hearing of this case.